Roberts v. St. Marys.

MARY ROBERTS V. THE CITY OF ST. MARYS.

No. 15,307.   (98 Pac. 211.)

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS—*Implied Authority of Officers—Injury to Employee.* It is a general rule that persons dealing with the officers of a municipal corporation must ascertain the nature and extent of their authority, but in matters which are the proper subjects of municipal action, where there is no provision of law requiring that such authority shall be given by formal action of the governing body, it may be shown by a course of conduct which induces others honestly to assume and rely upon its existence.

Error from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed November 7, 1908. Reversed.

*J. K. Codding, James Graham,* and *Charles Hayden,* for plaintiff in error.

*Maurice Murphy,* and *B. H. Tracy,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The plaintiff, Mary Roberts, sued to recover damages for the death of her husband through the alleged negligence of the defendant city in allowing a windmill, a part of the municipal water-works system, upon which he was at work for the city, to become defective and dangerous, thereby causing his death. The city admitted the ownership of the structure, and that Mr. Roberts was killed by falling from it, but denied that he was in its employ, and pleaded contributory negligence.

The evidence tended to show that the windmill was and had been for several years in charge of the city marshal, who superintended the repairs thereon, employed workmen for that purpose, gave them directions, and approved their bills, which were audited by

the council and paid by the city; that the deceased was oiling the mill when he fell from a ladder affixed to the tower of the windmill, the ladder being in a decayed and defective condition, causing the rungs to loosen and give way; that this defective and dangerous condition had existed for a considerable time, and it had been reported verbally by the marshal to the council at a meeting of that body more than a year before the injury, the marshal informing the council that "the wheel was in bad shape and that the ladder needed some repairs, and that if it was not done someone would get hurt." This oversight of the windmill and of the repairs thereon had continued during the official terms of two marshals before that of the incumbent under whom the deceased appeared to be working, and in a few days after the accident this marshal employed another workman to repair the ladder, who was paid by the city. Bills of other workmen as well as of the deceased for repairs on the mill were paid by the city. It was shown that at least one councilman had personal knowledge of Roberts's work upon the mill on previous occasions, that all of them must have known of the allowance of his bills therefor, and that the marshal was superintending the work, his "O. K." upon the bills being required. There was no evidence of any official action by the mayor and council instructing the marshal to cause the repairs to be made or placing the windmill in his charge.

The court sustained a demurrer to the evidence, upon the ground, as we infer from the briefs, that such formal action was not shown, and because there was no direct evidence of the actual employment of Roberts at the time he was injured. Such employment, however, may, with proper limitations, be implied against municipal corporations as well as individuals. Judge Dillon says:

"The present state of the authorities clearly justifies the opinion of Chancellor Kent, that corporations may

be bound by *implied contracts* within the scope of their powers, to be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing. This doctrine is applicable equally to public and private corporations, but in applying it, however, care must be taken not to violate other principles of law. Thus it is obvious that an implied promise can not be raised against a corporation, where by its charter it can only contract in a prescribed way, except it be a promise for money received or property appropriated under the contract." (1 Dill. Mun. Corp., 4th ed., § 459.)

(See, also, *Town of New Athens v. Thomas et al.,* 82 Ill. 259.)

The city by the operation of the windmill supplied water for public purposes. Repairs upon it are incidental to such operation. That they were being made must have been known to the council. The acts of the marshal in causing such repairs to be made, if not directly authorized, were ratified from time to time for a long period before the injury occurred and almost immediately afterward, and the circumstances were such that the authority in the particular instance could have been fairly implied. This does no violence to the rule that persons dealing with public officers must ascertain the nature and extent of their authority. In matters of this nature which are the proper subjects of municipal action, where there is no provision of law requiring that such authority shall be given by formal action of the governing body, it may be shown by a course of conduct which induces others honestly to assume and rely upon its existence.

"The general rule is unquestionable that a municipal corporation is not bound by the unauthorized act of an individual, whether an officer of the corporation or a mere private person, but the corporation may so deal with third persons as to justify them in assuming the existence of an authority in another, which in fact has never been given." (*Davies v. Mayor, etc., of City of New York,* 93 N. Y. 250, 253.)

In *Mound City v. Snoddy,* 53 Kan. 126, 35 Pac. 1112, reviewing an action to recover for services as an attorney, the court said:

"The court below properly instructed the jury that if the city, knowing the facts in relation to the employment, permitted Snoddy to act as attorney and represent the city, its conduct would operate as a ratification and acceptance of the acts of the mayor in making the employment, and that the city would be liable for what his services theretofore rendered were reasonably worth, unless with reasonable promptness it had notified him to discontinue the services." (Page 130.)

The evidence offered tended at least to prove that when the deceased was injured he was in the employ of the city and that there was negligence in failing to furnish him a safe place to work, and should have been submitted to the jury.

The question of contributory negligence presented in the brief of the defendant was also one for the jury to decide.

Further evidence was offered by the plaintiff tending to show that a former marshal had exercised care and control of the windmill and employed men to repair it, with the knowledge and implied assent of the mayor and council. This, in connection with other evidence tending to show that this oversight was continued by his successors to the time of the injury, was proper. Evidence having been offered from which the authority of the marshal to employ the deceased might have been inferred, it follows that all competent evidence of such employment should have been allowed. Some evidence of this nature appears to have been rejected because of the view apparently taken that there was no evidence of the marshal's authority to employ him.

Some other errors are alleged in excluding testimony, but with the principles now announced it is not deemed necessary to refer to the rulings in detail. The judgment is reversed, and the cause remanded for a new trial.