No. 45,852

WEIL AND ASSOCIATES, *Appellant,* v. THE URBAN RENEWAL AGENCY OF THE WICHITA, KANSAS METROPOLITAN AREA, and its Board of Commissioners, *Appellees.*

(479 P. 2d 875)

Opinion filed January 23, 1971.

*William L. Fry,* of Wichita, argued the cause, and *John P. Schaefer,* of Wichita, was with him on the brief for the appellant.

*Jack Glaves,* of Wichita, argued the cause, and *Edward Weil,* of Wichita, was with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an action for damages for breach of contract. Plaintiff appeals from an order sustaining defendants' motion to dismiss for failure of the petition to state a claim upon which relief can be granted (K. S. A. 60-212 [*b*] [6], as amended). The trial court found no contract existed between the parties.

The trial court had before it only plaintiff's petition to which were attached numerous exhibits. The petition was detailed in nature, revealing the following: Plaintiff is an unincorporated joint venture consisting of Bernard Weil of New Orleans, Louisiana, and Bruce C. Quantrell and William L. Fry of Wichita, Kansas. Defendant agency is a body corporate created under our urban renewal law (K. S. A. 17-4742, *et seq.*) with its affairs conducted by a board of commissioners, also named as a defendant.

On December 6, 1965, defendants published notice to interested developers of their intention to offer for sale and development a tract of about four and one-half acres in the downtown Wichita business district, a part of the Civic Center Urban Renewal Project. The property was described as having a frontage of 318 feet along Douglas avenue with a depth of 600 feet. Defendants also furnished documents containing a map and description of the project and outlining generally the basic land use and building requirements as well as requirements for proposals submitted in response

to the offering. Plaintiff then expended much time and money in preparing its proposal and offer to purchase and develop the land. On April 11, 1966, plaintiff submitted a written offer to purchase the tract for the sum of one million dollars and thereafter made a public presentation to defendants of its proposal. By letter April 18, 1966, defendants acknowledged plaintiff's bid and requested more information. Defendants' letter indicated three proposals had been submitted. By letter dated May 11, 1966, plaintiff furnished the information requested by defendants. July 8, 1966, defendants adopted a resolution making a tentative selection of plaintiff as the redeveloper for the project. The resolution described the land to be developed as follows:

"A tract of land bounded on the north by the south line of First Street, and the east by the west line of Water Street, on the south by the north line of Douglas Avenue, and *on the west by the center line of Wichita Street* (as originally platted), all in the City of Wichita, Kansas, constituting 190,800 square feet, more or less; . . ." (Emphasis supplied.)

After reciting certain preliminary actions taken, the resolution further stated:

"WHEREAS, in the interest of all parties concerned, the Urban Renewal Agency desires to make known its tentative designation of a Redeveloper for the Site and its acceptance of the appropriate Redevelopment Proposal even though further negotiations must be conducted and completed, additional official actions taken, and appropriate procedures complied with before a formal Contract of Sale can be executed with the Redeveloper for sale and redevelopment of the Site.

"Now, THEREFORE, BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE URBAN RENEWAL AGENCY OF THE WICHITA, KANSAS METROPOLITAN AREA as follows:

"1. That Weil and Associates be and are hereby tentatively designated as Redeveloper for the Site, subject to all laws, rules, regulations and requirements pertaining to disposition of land in Urban Renewal Projects.

"2. That negotiations be entered into between the Agency and such Redeveloper as to contract provisions effecting sale and redevelopment of the Site, and that an appropriate contract be returned to this Body for consideration.

"3. That the Chairman be and is hereby directed, pursuant to K. S. A. 17-4750 (b) of the Kansas Urban Renewal Law, to immediately file an appropriate notice with the Board of City Commissioners of the City of Wichita, Kansas evidencing the Agency's intention to accept such Redevelopment Proposal, submitted by Weil and Associates on or after August 25, 1966.

"4. That this tentative designation of Weil and Associates as Redeveloper for the Site is conditioned upon said Redeveloper providing, for the benefit of the Urban Renewal Agency, the sum of $50,000 as evidence of the Redeveloper's willingness, ability and intention to proceed with the redevelopment as herein

contemplated, such amount to be provided not later than July 19, 1966, with interest earnings thereon, if any, to accrue to the benefit of the Redeveloper; provided that said sum shall remain on deposit and be made available as earnest money to guarantee full and timely performance by the Redeveloper of the Contract in the event of the execution thereof.

"5. That this tentative designation of the Redeveloper is conditioned upon the Redeveloper and the Agency executing the appropriate Contract referred to above in Section 2, not later than October 13, 1966, but shall further cease and determine should either of the following occur prior to said date:

"a. The Agency and the Redeveloper fail to agree as to any provision proposed to be included in Purchase Contract, including any required changes in the Redeveloper's Proposal.

"b. The Redeveloper shall fail to execute the Contract of Sale, including payment of good faith deposit, within ten (10) days after submission by the Agency of said Contract to the Redeveloper for execution.

"6. Notwithstanding any provision hereof to the contrary, it is the expressed intention hereof that in any event the Agency shall not by reason hereof or otherwise be deemed to be liable to Redeveloper, or any other person, firm or association concerned by reason of Redeveloper's proceeding hereunder in planning, developing, or in otherwise determining the feasibility of said Site development and that agency shall at all times have the absolute right without penalty or liability whatsoever and without notice of any kind to rescind its designation hereof and thereupon any and all alleged rights or interest whatever of Weil and Associates in and to said Site shall cease and determine."

Plaintiff's petition then alleges it performed every requirement in said resolution including the making of the $50,000 good faith deposit, and was at all times ready, willing and able to execute and perform under the standard form of contract used by defendants. One of the other bidders, Garvey Center, Inc., withdrew its bid by letter of July 13, 1966. By letter dated September 6, 1966, defendants sent plaintiff a copy of a proposed disposition contract for review and suggestions as to contents. This letter confirmed a previous telephone conversation regarding the eventual vacation of Wichita street between Douglas avenue and First street, stating defendants had a contractual agreement with the city regarding vacation of the street, which contract defendants believed was enforceable. The letter continued:

"Accordingly, we are ready to contract with you for the sale of the land on the basis that the street will be closed. In the event that a problem develops and the Agency could not deliver the land as per the agreement, this would come under Section 8 of Part I of the Contract, paragraph (f) and would be the responsibility of the Urban Renewal Agency.

"I assume that your designer will be in town and available this week, as we discussed. Hopefully, the necessary Site Plan, etc., can be decided upon so that the other aspects of this Contract, i. e., that which you are contractually

obligated to construct, may be drawn up so that a completed Contract Document can be submitted for approval to our Board and to the necessary Federal offices by the First of October and the Contract can be executed on October 13, 1966, (per the direction of the Board).

Section 8, Part 1, paragraph (f) of the proposed agreement provided:

"Section 702 *Termination By Redeveloper Prior to Conveyance* is hereby modified to read as follows:

"The Agency does not tender conveyance of the property, or possession thereof, in the manner and condition, and by the date, provided in the agreement and any such failure shall not be cured within thirty (30) days after the date of written demand by the Redeveloper, then the agreement shall, at the option of the Redeveloper, be terminated by written notice thereof to the Agency, and, except with respect to the return of the Good Faith Deposit, neither the Agency nor the Redeveloper shall have any further rights against or liability to the other under the Agreement."

Under date December 9, 1966, defendants wrote plaintiff the following letter:

"Subject: Execution of Contract, Civic Center

"You will recall that, on July 8, 1966, the Urban Renewal Agency adopted a Resolution tentatively designating Weil and Associates as Redeveloper for the Civic Center site north of Douglas Avenue. You will further recall that this Resolution was contingent upon the Agency and the Redeveloper being able to specifically negotiate contract terms, including any required changes in the Redeveloper's proposal, and further that the purchase Contract be executed not later than October 13, 1966.

"However, because of questions raised in connection with the proposed vacation of Wichita Street, the Wichita City Commission requested that we *not* execute such Contract on October 13, 1966, as planned. Shortly thereafter, the City Commission directed that we proceed with execution of the Contract, notwithstanding the Wichita Street question, since this problem is covered by appropriate contingencies in the Contract. Accordingly, the Board of Commissioners of this Agency has unanimously determined that we should proceed with execution of the Contract immediately.

"Since October 13, a further problem has arisen. This relates to required setbacks on Douglas Avenue. As we have previously explained to you, any amendment to the Urban Renewal Plan is subject to approval of all parties affected thereby. This specifically includes the First National Bank, the designated Developer for the tract at the northeast corner of Douglas and Water. The Bank has generally complied with the requirements of the original Urban Renewal Plan and, in the process, leaves a setback of 35 feet from Douglas Avenue. Accordingly, they violently object to your proposal of building all the way to the property line at Douglas and Water. In addition, the Board of Commissioners of this Agency has determined that, in any event, at least a token setback must be provided at Douglas Avenue in the overall interest of the Civic Center Urban Renewal Plan. Accordingly, the

Board has unanimously determined that any amended Urban Renewal Plan will require a setback of not less than 15 feet at Douglas and Water. Furthermore, the original sign restriction will be retained whereas 'signs affixed to a building wall shall not extend more than 12 inches from the building wall'. We believe that these requirements are quite reasonable and throughly justified in terms of attaining the objectives of the original Urban Renewal Plan, which was the basis on which these competitive redevelopment proposals were received.

"Accordingly, we should establish an early time of mutual convenience for execution of the Contract, in accordance with the draft previously discussed and as modified by the foregoing Urban Renewal Plan requirements. We believe that there is no reason that such contract execution can not be accomplished no later than December 30, 1966. We would suggest that contract execution should occur at our next regular meeting on December 22, 1966. Please advise as to whether such time is satisfactory.

"It is essential that the contract be executed without further delay. Accordingly, if we are unable to satisfactorily conclude our negotiations and execute such Contract by December 30, 1966, this Agency will take action to rescind its tentative designation of Weil and Associates as Redeveloper for the Civic Center tract under discussion."

By letter of December 19, 1966, defendants mailed plaintiff another form of disposition contract. This contract included changes for the setback and sign requirements mentioned in the third paragraph of the December 9 letter. The letter made no mention of the vacation of Wichita street. It concluded with the assumption defendants would be hearing soon as to the date the contract could be executed. Plaintiff responded by its letter of December 28, 1966, as follows:

"Your letter of December 9, 1966, arrived in my absence from the city. Time has not permitted Ben Weil, Bruce Quantrell and I to jointly formulate a reply. We have not had an opportunity for the three of us to have a personal conference. However, we have discussed this matter over the telephone.

"On October 13, we were ready to pay our $50,000.00 good faith deposit and formalize the contract to purchase the 318 × 600 feet of land under the terms of our proposal, which had been accepted by the Urban Renewal Agency. The Agency was not quite ready at that time, and desired a delay.

"The Agency informed us that the Wichita Street matter would be resolved in two weeks, and then we could proceed.

"Our next communication from the Agency was your letter of the 9th.

"I am sure you are aware of the great amount of time and expense we have incurred based upon the acceptance of our bid. The $50,000.00 C. D. we have at the local bank under the terms of your acceptance of our proposal is just a small portion of our performance already.

"We agreed to and changed our plans to meet the suggestions of the agency as to coverage and set-back. Now you say either sign a 'contract' by December 31 or you're going to rescind your agreement.

"Until a basis for definite delivery of the whole parcel, or a reasonable price adjustment in event of a portion of the street is not delivered, as agreed upon, it is difficult to comprehend how we can be expected to sign such a unilateral document as recently presented.

"We are willing to formalize our agreement. We are willing and intend to pay the $1,000,000.00 for the 318 x 600 feet, under the terms of our proposal.

"We suggest that after the holidays a meeting be arranged between your Board and our group for a man-to-man review. Only by this method can we arrive at any proper understanding. We will wish to have our designer and architect attend. If you will suggest two or three alternate dates this will facilitate a time mutually convenient whereby all interested parties to our contract may be in attendance.

> "Sincerely yours,
> "William L. Fry (signed)
> "William L. Fry."

Plaintiff then sent defendants its January 6, 1967, letter which read:

"In our conference of January 4, we informed you that we would recommend to Mr. Weil that the contract submitted by the agency be executed if amended in two particulars:

"(1) There needs to be a provision setting a reasonable time for the agency to put itself in a position to deliver the full 318' x 600'. We discussed some three (3) months or so. At any rate, sufficient time for the city to effectuate abandonment of Wichita Street. If this wasn't done in that said period of time, we would have the right to draw down the $50,000.00 'good faith deposit,' or,

"(2) We have the option to purchase such property of the 318' x 600' as the agency is able to deliver. The price to be set by a reappraisal of the amount of land capable of being conveyed by your original appraisal, such reappraisal of the smaller portion by an appraisal as of the same date as of the original appraisal of the whole. The purchase price to be an amount determined by the ratio of the million dollar price for the whole as that bears to the original appraisal and the reappraisal of the smaller tract.

"You indicated that you thought these modifications were reasonable; and in your telephone call with Mr. DesMareau you stated that he thought likewise.

"We have now had an opportunity to talk to Mr. Weil by telephone, or rather Mr. Quantrell has; and Mr. Weil agrees to the execution of an amended contract as above set forth.

"Since you state that in your opinion a letter from the Board separate from the formal contract would not be binding, then we must insist these terms be formalized.

"You are aware, of course, that we have agreed to the modification of our plan in a manner meeting the desire of Mr. DesMareau and apparently the Board. We are most anxious to proceed with this development in order to

authorize our architect to proceed and in order to negotiate with possible tenants. We must know what we are getting.

"If you have any suggestions, do not hesitate to call me. We will send copies of this letter to the Board members in order that they might see that good business demands the agreement have some aspects of bilateral nature in regard to the rights and obligations in such a contract.

"Yours very truly,
"William L. Fry (signed)
"WILLIAM L. FRY."

By letter of January 17, 1967, defendants advised plaintiff as follows:

"We wish to advise you that, in Special Meeting on January 16, 1967, the Board of Commissioners of this Agency formally adopted a Resolution terminating its tentative designation of Weil and Associates as Redeveloper for the Civic Center block north of Douglas and west of Water. A copy of the Resolution is attached.

"In addition, we enclose a copy of our letter to the Stockyards National Bank disclaiming any further interest on our part on your $50,000 surety deposit.

"We are genuinely sorry that we were unable to mutually agree upon appropriate contract terms, and that you did not elect to execute the Contract offered by us within the prescribed time."

Plaintiff's petition then continues:

"XI.

"Despite the above and foregoing transactions, and despite the formal withdrawal by Garvey Center, Inc., of their bid, and without following any method of competitive bidding, without any proper notice to plaintiff or to the public, and contrary to the laws of Kansas and of the United States under the pertinent federal statutes involving this transaction, defendant agency has attempted to contract with Garvey Center, Inc. for sale of the land involved, under terms contrary to law, in direct violation thereof, and contrary to and violative of the contract to sell the land to plaintiff.

"XII.

"Defendant agency wilfully and wrongfully failed, neglected and refused to require the abandonment of streets and alleys as they represented to plaintiff they had the power, right and obligation to do; and, in fact entered into an illegal, wrongful and unlawful agreement or attempted, though illegal arrangement or writing in an attempt to dispose of the land to Garvey Center, Inc. and plaintiff is informed has now actually delivered some form of deed or conveyance of title to said Garvey Center, Inc. which is all contrary to law, void and should be set aside and held for naught.

"XIII.

"Plaintiff relied on defendant's representations that it could sell *and* land described in 'Exhibit A' free and clear of any easements, and particularly free and clear of Wichita Street. In reliance upon all the representations plaintiff paid the $50,000.00 down payment, and partially performed the contract;

but was prevented from going forward by the unlawful acts of defendants. Plaintiff alleges that defendants unlawfully, wrongfully, arbitrarily, capriciously without just cause, violated the contract to sell said land to plaintiff.

### "XIV.

"Said land is very unique and cannot be duplicated. Plaintiff is entitled to specific performance of said contract, but specific performance has been rendered practically impossible by virtue of the acts of defendants.

"Plaintiff has been damaged in the sum of One Million ($1,000,000.00) Dollars as a result of the wrongs of defendants aforesaid."

As indicated, in sustaining the motion to dismiss the trial court specifically found no contract existed between the parties.

Upon appeal plaintiff principally contends the trial court erred in dismissing the action in that the petition showed the existence of a contract between the parties. It asserts the petition contained "a short and plain statement of the claim showing that the pleader is entitled to relief", as provided by K. S. A. 60-208 (a), which is all that is required. The argument is, as stated in its brief, "all terms of the contract were agreed upon and merely the clerical act of formalizing these terms remained". Plaintiff insists its petition clearly pleaded the existence of a contract between the parties, as well as breach thereof and resulting damage.

In *Robertson v. McCune,* 205 Kan. 696, 472 P. 2d 215, we considered the scope of a motion to dismiss and said:

"When a motion to dismiss under K. S. A. 60-212 (b) (6) . . . raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer." (p. 700.)

Obviously, disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.

The thrust of the foregoing is the court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if

these allegations are contradicted by the description itself (see 5 Wright & Miller, Federal Practice and Procedure, § 1357).

Plaintiff here filed more than a simple "barebone" notice-type pleading. Its petition was detailed and specific as to events. All transactions and dealings between the parties were either evidenced or confirmed by writings, which were pleaded. Although the parties disagree upon interpretation, no dispute appears from the record as to what transpired throughout the entire negotiations between the parties.

It is elemental that in order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms thereof (*Topeka Savings Association v. Beck*, 199 Kan. 272, 428 P. 2d 779). Moreover, (with possible exceptions not here applicable) an agreement to make a contract in the future is not binding unless all the terms and conditions are agreed upon and nothing is left to future negotiation (*Railroad Co. v. Gorman*, 79 Kan. 643, 100 Pac. 647).

Such being the law, we are unable to see, under the facts of this case, the existence of a contract. We have set forth much of the writings passing between the parties. In those, as well as in others we have omitted, is the definite expression that all the terms of the final contract were not agreed upon but remained subject to negotiation and that a written formal instrument embodying any final agreement was contemplated. Plaintiff's petition is replete with this. We mention a few. The initial "prospectus" pointed out amendments to the entire urban renewal plan might be made in order to achieve the desired objectives. Negotiation was clearly indicated in case new or amended proposals came into being. One item of information sought by defendants in its April 18th letter was the earliest date upon which plaintiff would be prepared to execute a legally binding contract for the site purchase and construction of improvements, without reservation or contingency. Plaintiff's response to this was: "At such time as the Agency can fully deliver land for development". Defendants' July 8th resolution selecting plaintiff as the developer repeatedly stated such designation was tentative; it specifically stated "further negotiations must be conducted and completed, additional official actions taken, and appropriate procedures complied with before a formal Contract of Sale can be executed"; it directed that negotiations be entered

into as to the contract provisions effecting the sale; it provided the $50,000 deposit should remain on deposit as earnest money to guarantee performance of the contract in the event of execution thereof; it stated the tentative designation was conditioned upon the execution of an appropriate contract within stated time limits and that such designation should cease if the parties failed to agree as to any provision proposed to be included in the contract or if plaintiff failed to make timely execution of the contract; additionally the resolution provided defendants would not be liable to plaintiff by reason of plaintiff's proceeding in planning and determining feasibility of the development and finally that defendants at all times had the right to rescind the designation at any time without penalty or liability. Later correspondence between the parties evinced the same understanding.

As indicated, disagreement arose respecting three items: Width of setback of buildings from the street, sign restrictions and the vacation of Wichita street, the east half of which was initially contemplated as being within the tract to be sold. Negotiations between the parties evidently resulted in agreement upon the first two items. Vacation of the street remained in controversy, either over the amount of land to be delivered, or, if a lesser amount were delivered than initially contemplated, then price. Plaintiff throughout recognized this lack of agreement. In its December 28th letter it stated it could not sign the contract presented unless the whole parcel was delivered or a reasonable price adjustment made in lieu thereof. In its January 6th letter it asserted a right to withdraw its good faith deposit if there was no provision for a timely abandonment of Wichita street. (It had this right under the so-called "escape" clause, Section 8, Part I, paragraph [f] of the proposed contract). The initial proposal offered only a lump sum consideration for the entire tract mentioned.

Undoubtedly execution of a binding contract was expected, but the intention of the parties seems clear: They negotiated with the definite understanding the terms of any contract were not fully agreed upon; a written formal agreement was contemplated and no valid, enforceable contract was to exist until the execution of such an instrument. The intention of the parties is controlling. In such case, where a written agreement was never executed, a binding contract never came into existence, and we so hold, as

did the trial court (see anno. 122 ALR 1217, 1232, 165 ALR 756, 759, 764). Plaintiff's position that a contract existed is not strengthened by the fact it made expenditure of time and money—these were simply normal business expenses incurred on the expectancy of ultimate success.

Plaintiff also complains in its brief the trial court overlooked two other possible theories available for it to obtain relief, "These being the administrative law theory predicated upon the position that the agency acted arbitrarily and capriciously, and in so doing was guilty of abuse of administrative discretion. The other theory being fraud". Plaintiff fails to elaborate this basis for possible relief. We have quoted the latter part of plaintiff's petition containing the matter referred to. As we read paragraphs XI, XII and XIII of the petition any statements arbitrary or capricious conduct, or other so-called wrongdoing, were simply descriptive of the alleged breach of contract for which plaintiff sought recovery. Here, again, existence of a binding contract is presupposed and is the basis of the claim for relief.

We find no mention of fraud in the petition nor any compliance therein with K. S. A. 60-209 (*b*) which requires that in all averments of fraud the circumstances constituting the fraud shall be stated with particularity. Nor does the record reveal plaintiff raised the matter before the trial court so as to avoid the consequence of its failure to plead properly the issue of fraud.

Plaintiff argues defendants wrongfully failed to accomplish the abandonment of Wichita street; however, it makes no contention an urban renewal agency has the power to vacate municipal streets or to compel their vacation and we are aware of none. Plaintiff can scarcely take advantage of any overextension on the part of defendants based on lack of authority to act. The rule is one who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. The municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, and all persons contracting with the corporation are deemed to know its limitations in this respect (10 McQuillin, Municipal Corporations, 1966, § 29.04). We have always followed this salutary rule (*City of Leavenworth v. Rankin*, 2 Kan. 357; *Roberts v. St. Marys*, 78 Kan. 707, 98 Pac. 211; *State, ex rel., v. City of Coffeyville*, 127 Kan. 663, 274 Pac. 258).

Finally, plaintiff complains the trial court's ruling was prematurely rendered prior to completion of discovery thereby depriving it of that right. In its brief plaintiff argues it should have the right to amend its petition and through further discovery "elect as to what theory it could prove or which theory is most provable". K. S. A. 60-212 (b) (6) authorizes the treatment of the motion to dismiss as one for summary judgment where matters outside the pleading are presented to and not excluded by the court, and it further grants all parties the opportunity to present all material made pertinent to such a motion. The difficulty with plaintiff's present position is, the trial court's order of dismissal specifically informed plaintiff of the reason for the dismissal yet plaintiff at no time sought either to present additional factual data to the court or to amend its petition. Indeed it seems fairly apparent from the voluminous nature of the petition with its fifteen exhibits that plaintiff did embody all factual data pertinent to its claim in the pleading and that plaintiff elected to stand on the pleading. Nor has plaintiff made clear to this court just what additional facts it might present which would be of sufficient benefit to avoid dismissal. This belated complaint does not warrant disturbance of the order appealed from.

The judgment is affirmed.

APPROVED BY THE COURT.