**Ronald E. BURK, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT NO. 329, WABAUNSEE COUNTY, KANSAS, et al., Defendants.**

**Civ. A. No. 84–4235–0.**

United States District Court,
D. Kansas.

Nov. 10, 1986.

---

Wesley A. Weathers, Weathers & Riley, Topeka, Kan., for plaintiff.

Gregory J. Bien, Topeka, Kan., Leonard M. Robinson, Eskridge, Kan., Bill Baldock, Alma, Kan., Wilburn Dillon, Jr., J. Franklin Hummer, David A. Hanson, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This case was tried before a jury on October 14, 1986, through October 28, 1986. At the close of plaintiff's evidence, defendants moved for a directed verdict on plaintiff's claims that he was deprived of his property and liberty interests without due process of law. The individual defendants also moved for a directed verdict on all of plaintiff's claims against the individual defendants. At that time, the court granted defendants' motion against the property interest claim and the liberty interest claim as it pertained to the charges made in plaintiff's evaluation. The court deferred ruling on the individual defendants' motion and granted it at the close of all evidence. This written memorandum and order more thoroughly addresses the issues raised by defendants' motion and reflects the court's rulings from the bench.

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff claims that the Unified School District No. 329, Wabaunsee County, Kansas [hereinafter the School District], the Superintendent of Schools [hereinafter the Superintendent], and the members of the Board of Education [hereinafter the Board] violated his civil rights when they nonrenewed his employment as principal of Wabaunsee High School and, in connection with this nonre-

newal, denied him a hearing to clear his good name and reputation.

■ In considering a motion for directed verdict, the court must view the evidence in the light most favorable to the party against whom the motion is made. *Sandoval v. United States Smelting, Refining and Mining Co.*, 544 F.2d 463, 463 (10th Cir.1976). A directed verdict is proper "only where the evidence and all the inferences to be drawn therefrom are so patent that minds of reasonable people could not differ as to the conclusions to be drawn therefrom." *Ramsey v. Culpepper*, 738 F.2d 1092, 1097 (10th Cir.1984).

A summary of the evidence in this case, viewed in the light most favorable to plaintiff, is as follows. Plaintiff was employed as principal of Wabaunsee High School for the 1982–83 academic year pursuant to a one-year written contract. Plaintiff's contract was renewed in the spring of 1983 for another year. Plaintiff's contract expressly adopted by reference a written job description and evaluation document.

In accordance with the Kansas Evaluation of Certificated Personnel Act, K.S.A. 72–9001 *et seq.* (1985) [hereinafter the Evaluation Act], the Board in 1974 adopted a formal written evaluation policy and filed it with the Kansas State Board of Education. The policy specifies that if the evaluator perceives an inadequacy in the employee's job performance that is "blatant and/or continuous" then the evaluator must provide the employee with a full description of the deficiencies and recommend steps to correct them. Furthermore, official Board Policy GAD assures all certified employees that they will be given an opportunity to improve their performance.

In accordance with the Evaluation Act, the Board also adopted and filed with the State Board of Education an official form for evaluating principals, which lists certain specific objectives and criteria for evaluation. Plaintiff was evaluated twice each academic year as required by the Evaluation Act. In his fourth evaluation, dated January 30, 1984, plaintiff was rated "outstanding" on each objective except Objective IV. On that objective, which was entitled "Public Relations," plaintiff was rated "inadequate." For the first time, a new criteria was added to this objective, which read:

4. Communicates effectively with faculty and establishes an effective working relationship with faculty.

In making the evaluation, the Superintendent stated:

Ron, you have not been able to accomplish Item 4. For this reason your performance in this area has to be designated as *inadequate.*

At the conclusion of the evaluation form, the Superintendent recommended that the Board nonrenew plaintiff's contract, stating:

*Not recommended for continued employment.* I'm sorry a person of such outstanding performance in all but one category can not be recommended for continued employment with the district. But, this one area is the most crucial to being a successful principal.

This evaluation was eventually placed in plaintiff's personnel file where it was open to inspection by prospective employers.

On February 13, 1984, the Board met in executive session (*i.e.,* in a closed meeting not open to the public) with the Superintendent to discuss his recommendation of nonrenewal. The Board reached a consensus to nonrenew plaintiff's contract. Later, at this same meeting, a letter from a student was read to the Board, in which the student complained that plaintiff had made inappropriate comments of a sexual nature to her at school. The Board returned from executive session to a public meeting and voted to nonrenew plaintiff's employment contract for the following year.

Counsel for the school district was informed of the student letter on February 14, 1984. Defendants told counsel that the letter had nothing to do with their decision to nonrenew plaintiff's contract. Based on this information, counsel advised the Board not to discuss the letter and to do nothing further with it. Counsel further advised

the Board that it need not provide plaintiff with a hearing to discuss the letter or his nonrenewal. She advised the Board to follow its standard policies in handling the letter and plaintiff's nonrenewal.

Although the Board had a policy for handling complaints, counsel was not aware of the specifics of the policy and did not draw the Board's attention to it. That policy, entitled "Policy KN," provided:

> [C]omplaints will be investigated fully and fairly, and the employee's rights to due process will be protected at all times.... The employee involved will be informed and will be given every opportunity for explanation, comment and presentation of the facts as the employee sees them. The employee will also be given the opportunity to meet with the person(s) making the complaint if the employee so desires.

Plaintiff was informed of his nonrenewal on February 14, 1984, but was not advised of the student complaint. Later, rumors began to circulate in the community about the existence of a letter from a student charging plaintiff with sexual misconduct. Rumors also surfaced that plaintiff was nonrenewed because of this misconduct. The letter was destroyed by the defendant Superintendent some time in February.

Despite counsel's advice that the Board need not meet with plaintiff, the Board met with him on March 5, 1986, in executive session and advised plaintiff that he was nonrenewed for his failure to develop rapport with the faculty. When plaintiff inquired about the student letter, the Board refused to discuss it with plaintiff. Further, when plaintiff requested a hearing to clear his name, the Board refused him such a hearing.

## I. *Property Interest.*

Defendants move for a directed verdict on plaintiff's claim that he had a property interest in continued employment with the school district and that the district deprived him of this right without due process. Plaintiff contends that even though he was a nontenured principal, he had a right to not be nonrenewed for incompetency without first being evaluated in accordance with the Board's official evaluation policy. Plaintiff asserts that this policy, together with the Kansas Evaluation Act, which governs it, and his contract, job description, Principal's Handbook, evaluation documents, and other Board policies, formed an implied contract of employment. Plaintiff claims that this implied contract assured him of the right to be advised of any perceived deficiencies in his job performance and the right to attempt improvement before nonrenewal.

■ It is well established that a property interest in continued employment may be created by a state statute, ordinance or an implied contract. *See, e.g., Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Vinyard v. King,* 728 F.2d 428, 432 (10th Cir.1984). In any event, the sufficiency of entitlement must be decided by reference to state law. *Bishop,* 426 U.S. at 344, 96 S.Ct. at 2677. We must therefore look to Kansas law to determine whether plaintiff has a valid property interest.

It is the court's opinion that plaintiff's position that he had a property interest in continued employment pursuant to an implied contract based on the Evaluation Act and other materials is contrary to the legislative intent of the Teachers' Due Process Act and the Administrators' Act. Plaintiff's theory would totally obliterate the distinctions carefully drawn by the Kansas Legislature in providing for different procedures for renewal of tenured versus nontenured teachers and principals. It is also the court's opinion that any implied contract entered into by the defendants with plaintiff, giving plaintiff, a nontenured principal, a property interest in continued employment, is ultra vires and therefore void.

### A. *The Statutes.*

The Teachers' Due Process Act, K.S.A. 72–5436 *et seq.* (1985), applies only to teachers, K.S.A. 72–5436(a), who have tenure,

i.e., those who have been employed for two consecutive years in the district, K.S.A. 72–5445(a). Under this Act, a tenured teacher may be nonrenewed only if given written notice of nonrenewal by April 10, K.S.A. 72–5437, and only if good cause is shown, *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 76, 605 P.2d 105, 110 (1980). The teacher is entitled to a hearing with the right to have counsel present, and the right to provide testimony and cross-examine witnesses. K.S.A. 72–5439. The purpose of the hearing is to ascertain whether good cause exists for the notice of nonrenewal. *Gillett*, 227 Kan. at 77, 605 P.2d at 110.

The former version of the Due Process Act enumerated several acts constituting good cause: immoral character, insubordination, inefficiency, incompetency, physical unfitness, etc. *Id.* The present version of the statute does not define good cause or even use the term "good cause." Nevertheless, the Kansas Supreme Court has held that "[t]he requirement of good cause is inherent in the statutory scheme...." *Id.* at 76, 605 P.2d at 110. Good cause includes "any ground which is put forward by the School Board in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the School Board's task of building up or maintaining an efficient school system." *Id.* at 77, 605 P.2d at 110. The power to define good cause now lies with the Board of Education. *Id.*

■ In sum, under the Teachers' Due Process Act, a *tenured* teacher may be nonrenewed only after timely notice and for good cause, and is entitled to a due process hearing upon nonrenewal. A *nontenured* teacher, on the other hand, is entitled to none of the protections of the Due Process Act and may be dismissed for any reason or no reason at all. A nontenured teacher is, however, entitled to timely notice of nonrenewal (by April 10) under the Continuing Contract Law, K.S.A. 72–5411.

The Administrators' Act, K.S.A. 72–5451 *et seq.* (1985), is the administrators' counterpart to the Teachers' Due Process Act and applies only to administrators, principals, and supervisory personnel. K.S.A. 72–5451(b). Like the Teachers' Due Process Act, it applies only to tenured personnel, *i.e.*, those who have completed two consecutive years of employment with the same district. K.S.A. 72–5455. The Act requires that the tenured administrator receive notice of nonrenewal by April 15. K.S.A. 72–5452. The Act entitles the nonrenewed tenured administrator to a hearing with the Board in executive session wherein the Board must give its reasons for nonrenewal. K.S.A. 72–5453. The administrator is then given the opportunity to respond. *Id.* Unlike the Due Process Act, the Administrators' Act does not provide the nonrenewed tenured employee the right to counsel or the right to present witnesses or crossexamine the Board's witnesses. On the other hand, it appears that the same good cause requirement implied in the Due Process Act should also be implied in the Administrators' Act, such that tenured administrators may be nonrenewed for good cause only. (No case law exists on this issue, and the Administrators' Act, like the Due Process Act, never uses the words "good cause.")

■ In sum, under the Administrators' Act, a *tenured* administrator may be nonrenewed only after timely notice and upon good cause, and is entitled to go before the Board. A *nontenured* administrator, on the other hand, receives none of the protections of the Administrators' Act and, like untenured teachers, may be nonrenewed for any reason or no reason at all. The nontenured administrator is, however, entitled to timely notice (April 10) under the Continuing Contract Law, K.S.A. 72–5411.

In addition to the Due Process and Administrators' Acts, teachers and administrators in Kansas are covered by the Evaluation of Certificated Personnel Act, K.S.A. 72–9001 *et seq.* K.S.A. 72–9003 provides that every Board of Education must adopt a written evaluation policy and file that policy with the State Board of Education. K.S.A. 72–9004(f) provides:

The contract of any person subject to evaluation shall not be nonrenewed on

the basis of incompetence unless an evaluation of such person has been made prior to notice of nonrenewal of the contract and unless the evaluation is in substantial compliance with the board's policy of personnel evaluation procedure as filed with the state board in accordance with the provisions of K.S.A. 72–9003, and amendments thereof.

Further, K.S.A. 72–9004(a) provides that the evaluation policy should take into consideration such qualities and attributes as efficiency, professional deportment, ability, results and performance.

Unlike the Due Process and Administrators' Acts, the Evaluation Act applies to both tenured and nontenured personnel. K.S.A. 72–9003(d)(1) of the Evaluation Act provides that "every employee" in the first two years shall be evaluated once a semester; "every employee" in the third or fourth year shall be evaluated once a year; and "every employee" in the fifth or greater year shall be evaluated once every three years. K.S.A. 72–9004(f) applies to the "contract of *any* person subject to evaluation." (emphasis added).

At first blush, the Evaluation Act appears to conflict with the Due Process and Administrators' Acts in that the Evaluation Act appears to entitle *all* personnel (not just tenured personnel) to nonrenewal only for cause. Admittedly, K.S.A. 72–9004(f) requires the Board to evaluate *all* personnel in terms of such qualities as efficiency, ability, results and performance. This would appear to imply that the Board may not nonrenew nontenured personnel unless it finds a deficiency in one of these areas. This interpretation, however, would clearly conflict with the Due Process and Administrators' Acts, which by negative implication, provide that nontenured personnel

may be dismissed for any reason or no reason at all.

■ All statutes in *pari materia* (i.e., those enacted by the same legislature concerning the same subject matter) must be read and construed together. *City of Overland Park v. Nikias*, 209 Kan. 643, 646, 498 P.2d 56, 59 (1972). Such statutes must be construed in harmony if possible to the end that all may be given full force and effect. *Id.*

■ The only way in which the Evaluation Act can be read in harmony with the Due Process and Administrators' Acts is to read K.S.A. 72–9004(f) very narrowly. Construed in this manner, we read subsection (f) as merely requiring that the Board evaluate the employee at some time before nonrenewal and that the Board follow its own procedures. It does not require the Board to renew if the employee possesses certain qualities or nonrenew if the employee lacks certain qualities. That would clearly contradict the Kansas Legislature's intent in enacting the Due Process and Administrator's Acts.

Furthermore, although the stated purpose of the Evaluation Act is "to provide for a systematic method of improvement of school personnel," K.S.A. 72–9001, there is no requirement that the employee, particularly a nontenured employee about to be nonrenewed, be given an opportunity to improve before notice of nonrenewal may be given. To imply such a requirement would put the Evaluation Act at odds with the fact that only tenured employees are entitled to special protection as provided in the Due Process and Administrators' Acts. The only consistent interpretation of the Evaluation Act is that its purpose is to provide for the improvement of employees who *remain* in the school district's employ.[1]

In *Collins,* a tenured teacher sued his employer school board when they nonrenewed his contract. Collins complained that his evaluation was performed after the February 15 deadline required by K.S.A. 72–9003(d)(1) (1984 Supp.) and that he was nonrenewed only one month after his evaluation. Plaintiff alleged that he was denied the legislatively intended opportuni-

---

**1.** The Kansas Court of Appeals reached a similar conclusion in the unpublished opinion *Collins v. Board of Education,* — Kan.App. —, 708 P.2d 1003 (table) (1985). Although Kansas Supreme Court Rule 7.04, 235 Kan. LXXIV (1984), provides that such an unpublished opinion is without value as precedent, we find the court's reasoning persuasive.

B. *The Implied Contract.*

In light of the above, it is clear that a teacher or administrator may not rely solely on the Evaluation Act to maintain that he or she has a property interest in continued employment. However, in our case, plaintiff's claimed property interest is based not only on the Evaluation Act, but also on the Board's evaluation policy, written contract, handbooks, and other district policies. The Board's evaluation policy, in conjunction with the other materials relied upon by plaintiff, require that the employee (regardless of tenure) be given notice of his performance deficiencies and be given the opportunity to improve.

In support of his claim, plaintiff relies on *Quintana v. Archuleta,* Nos. 72–1358 and 72–1359 (10th Cir., *unpublished,* Feb. 6, 1973) (discussed and reaffirmed in *Atencio v. Board of Education,* 658 F.2d 774 (10th Cir.1981)), in which the Tenth Circuit held that the practices and policies of a state board of education may properly create an expectation of re-employment in the absence of compliance with those practices and policies. *See also Perry v. Sinderman,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (plaintiff entitled to prove a property interest in light of "the policies and practices of the institution.")

The court does not find these cases applicable to the instant case. Implicit in the holdings of *Quintana* and *Perry* is the requirement that the practices and policies of the institution be valid and not in conflict with state law. In the case at bar, the school board's evaluation policy and other items relied upon by plaintiff, requiring that the employee be given the opportunity to correct his deficiencies, amount to de facto tenure for teachers and principals employed for less than two years. As we

discussed above, this is in direct conflict with the Due Process and Administrators' Acts, which provide nontenured employees no expectation of continued employment.

■ A school district is an arm of the state "existing only as a creature of the legislature to operate as a political subdivision of the state." *Wichita Public Schools Employees Union v. Smith,* 194 Kan. 2, 4, 397 P.2d 357, 359 (1964). A school district or Board of Education has only limited authority to promulgate policies and enter into contracts. Any attempt by a district or board to enter into a contract or formulate a policy that violates state law is ultra vires and void. *Gragg v. U.S.D. No. 287,* 6 Kan.App.2d 152, 155, 627 P.2d 335, 339 (1981). As the court of appeals stated in *Gragg:*

> A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication. *Wichita Public Schools Employees Union v. Smith,* 194 Kan. 2, 4, 397 P.2d 357 (1964).
>
> One who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. The municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, and all persons contracting with the corporation are deemed to know its limitations in this respect. *Weill & Associates v. Urban Renewal Agency,* 206 Kan. 405, Syl. ¶ 8, 479 P.2d 875 (1971).

6 Kan.App.2d at 155, 627 P.2d at 338–39.

■ Any attempt by the Board to enter into a contract or promulgate an evaluation

---

ty for improvement expressed in the Evaluation Act. Because the school board had failed to comply with its evaluation procedures under K.S.A. 72–9004(f), plaintiff claimed the board had no right to nonrenew his contract.

The court of appeals held that the law does not require that nonrenewal follow a timely evaluation by any prescribed length of time nor does it require that the teacher be given time to

improve following his or her last evaluation. The court reasoned that their holding did not subvert the legislative intent expressed in the Evaluation Act at K.S.A. 72–9001 because the intent of the Act is "implemented by the utilization of evaluations for the improvement of school personnel who continue in their jobs." Slip op. at 4. We find this reasoning persuasive and applicable to the facts of this case.

policy giving an employee rights in conflict with the Due Process and Administrators' Acts would be ultra vires and void. We must therefore hold that plaintiff had no contractual right to continued employment. Consequently, we will grant defendants' motion for directed verdict on plaintiff's claim that he was deprived of a property interest in continued employment as principal of Wabaunsee High School.

## II. *Liberty Interest.*

Plaintiff claims that the defendants deprived him of his liberty interests in two respects. First, plaintiff claims that the statements made in his evaluation concerning the reasons for his nonrenewal damaged his reputation and foreclosed future employment opportunities. Second, plaintiff claims that, in connection with his nonrenewal, a defamatory impression created by defendants about plaintiff with regard to the student complaint stigmatized his good name and reputation and foreclosed future employment.

■ It is well established that a public employee may not be deprived of liberty without due process:

> The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities.... The manner in which a public employee is terminated may deprive him of either or both of these liberty interests.

*Miller v. City of Mission, Kansas,* 705 F.2d 368, 373 (10th Cir.1983) (citations omitted). When the employee's dismissal is accompanied by dissemination of charges that stigmatize the employee's reputation or foreclose future employment opportunities, due process requires that the employee be given a hearing in which he may clear his good name and reputation and refute the charges. *Id.; McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981).

■ The Tenth Circuit has not expressly defined what types of charges are sufficiently stigmatizing so as to implicate a liberty interest. Clearly, charges of dishonesty or immorality are injurious to an employee's reputation. *Abeyta v. Town of Taos,* 499 F.2d 323, 327 (10th Cir.1974). Such charges generally also foreclose employment opportunities for a principal or teacher in the public schools. *See McGhee v. Draper,* 564 F.2d 902, 910 (10th Cir.1977) (directed verdict improper on teacher's liberty claim where teacher was charged with sexual misconduct and drunkenness). It is the court's opinion that plaintiff has presented sufficient evidence on his claim that the Board's handling of the student complaint created an allegedly defamatory impression about plaintiff so as to withstand a directed verdict. Plaintiff's morality was clearly called into question by the letter and the rumors circulating about the letter. Plaintiff is therefore entitled to go to the jury on his claim that his reputation and ability to obtain employment as a principal in the public schools were injured in connection with the Board's handling of the student letter.

In contrast to charges of immorality and dishonesty, allegations of improper job performance are not generally so stigmatizing as to injure the employee's reputation or foreclose future employment. *Weathers v. West Yuma County School District,* 530 F.2d 1335, 1339 (10th Cir.1976); *Abeyta,* 499 F.2d at 327. The fact that the reasons communicated for nonrenewal make an employee less attractive to future employers is not sufficient to establish a liberty interest. *Weathers,* 530 F.2d at 1339. When, however, the charges go to the "fundamental capacity" of the employee to perform his job, the charges may be stigmatizing. *Garcia v. Board of Education of Socorro Consolidated School District,* 777 F.2d 1403, 1419 (10th Cir.1985) (McKay, J., dissenting), *cert. denied.* —— U.S. ——, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986).[2]

---

**2.** The majority opinion in *Garcia* did not address this issue and dismissed the case on eleventh amendment immunity grounds. Judge

McKay dissented on the eleventh amendment issue and went on to rule that the trial court's denial of defendants' directed verdict motion

The court concludes that the charges made in plaintiff's evaluation are not, as a matter of law, so stigmatizing as to damage plaintiff's reputation or to foreclose plaintiff from taking advantage of other employment. Such charges are allegations of improper job performance or deficiency in performance similar to those found in *Abeyta* and *Weathers*, and do not implicate a liberty interest. We find such charges dissimilar from those in *Miller v. City of Mission*, 705 F.2d 368 (10th Cir. 1983), where the court found a liberty interest was invoked. In *Miller*, the charges went to the plaintiff's overall ability to be a police chief—the charges stated that morale in the police department was very low, that the officers did not respect the plaintiff and that the department had deteriorated to such an extent that the officers could not work for plaintiff. *Id.* at 373.

The charges in *Miller* went to the overall incompetency of Miller to be police chief. In contrast, the charges in the instant case are merely that plaintiff was rated "inadequate" in his ability to communicate effectively with his faculty and in his ability to establish an effective working relationship with them. We are aware that the Superintendent states in plaintiff's evaluation that plaintiff's inadequacy was in the "one area ... most crucial to being a successful principal." We do not, however, believe that this statement alone is sufficient to implicate plaintiff's overall competency, especially since plaintiff was rated outstanding on all six other objectives.

A mere charge that a principal cannot get along with his faculty or cannot effectively communicate with them is not stigmatization of constitutional proportions. While such a charge may reflect unfavorably in one area of plaintiff's job performance, it does not restrict his freedom to take advantage of other employment in a constitutional sense. Here there is no evidence that plaintiff's employment opportunities were affected. There is no evidence that a prospective employer refused to interview or hire plaintiff based on the statements made in plaintiff's evaluation. The mere fact that his evaluation may have made him less attractive to future employers is not sufficient to invoke a liberty interest.

A review of cases from other circuits supports our conclusion. The Ninth Circuit has held that only charges involving "moral turpitude" may implicate a liberty interest. *See Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1101 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Consequently, the Ninth Circuit cases hold that a charge of incompetence or inability to get along with co-workers does not infringe a liberty interest. *See Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–66 (9th Cir. 1976); *Gray v. Union County Intermediate Educational District*, 520 F.2d 803, 806 (9th Cir.1975). Although the other circuits acknowledge that charges other than moral turpitude may create a stigma and foreclose job opportunities, these circuits in general hold that charges of incompetence and poor job performance do not arise to a constitutional level. *See, e.g., Raposa v. Meade School District*, 790 F.2d 1349, 1354 (8th Cir.1986) (charges against teacher of poor performance and poor interpersonal relationships in the community not stigmatizing); *Hadley v. County of DuPage*, 715 F.2d 1238, 1247 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984) (charge of mismanagement by superintendent of public works not stigmatizing); *Ventetuolo v. Burke*, 596 F.2d 476, 483 (1st Cir.1979) (charges of insubordination, hostility towards superior and complete refusal to follow commands against director of educational training program not stigmatizing); *Elkin v. Roudebush*, 564 F.2d 810, 813 (8th Cir.1977) (charges against nurse of unsatisfactory performance and difficulties with interpersonal relationships not stigmatizing); *Blair v. Board of Regents*, 496 F.2d 322, 324 (6th Cir.1974) (charges that professor failed to meet minimum standards in dealing with individual students not stigmatizing); *Ad-*

against plaintiff's liberty interest claim was proper.

*ams v. Walker*, 492 F.2d 1003, 1008–09 (7th Cir.1974) (charges of incompetence, neglect of duty and malfeasance against state liquor control commissioner not stigmatizing).

If we were to deny defendants' motion for directed verdict and find that a liberty interest was implicated under the facts of this case, we would be setting a dangerous precedent. In essence, we would be permitting virtually any terminated public official to sue for a liberty violation when his or her employer states a reason for termination. Under such circumstances, the public employer would merely opt to provide the terminated employee with no reasons for the dismissal, and the employee would then lose the benefit of learning from his or her mistakes.

As the Tenth Circuit has noted:

Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character.... But not every dismissal assumes a constitutional magnitude. The concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities....

*Weathers v. West Yuma County School District*, 530 F.2d 1335, 1339 (10th Cir. 1976) (quoting *Gray v. Union County Intermediate Educational District*, 520 F.2d 803, 806 (9th Cir.1975)).

In light of the foregoing, the court holds that a directed verdict is proper against plaintiff's claim that the charges made in his evaluation were so stigmatizing as to damage plaintiff's reputation or to foreclose him from taking advantage of other employment.

### III. *Qualified Immunity.*

The individual defendants move for a directed verdict on all claims against them on the ground that they are entitled to qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

In the recent case *Lutz v. Weld County School District*, 784 F.2d 340 (10th Cir.1986), the Tenth Circuit set forth the steps for determining whether a defendant is entitled to the defense of qualified immunity. Initially, defendants must properly raise the defense of qualified immunity, *i.e.*, they must assert that they were performing discretionary functions. *Id.* at 342. Plaintiff then has the burden to convince the court that the law relied upon by plaintiff was clearly established at the time the defendants allegedly deprived plaintiff of his or her civil rights. *Id.* at 342–43. If the plaintiff fails to convince the court that the law was clearly established, the defendants are qualifiedly immune and the court must enter judgment in favor of the defendants who have pled the defense. *Id.* at 343. If, on the other hand, the plaintiff convinces the court that the law was clearly established, the court must proceed to determine whether the defendants have raised a fact issue as to whether "exceptional circumstances" exist such that reasonable persons in their position would not have known of the relevant legal standard. *Id.* If the defendants raise such a fact issue, the defendants are entitled to a jury instruction on the defense. If not, defendants are not entitled to the defense as a matter of law. *Id.*

Applying these standards to the plaintiff's remaining claim, the court concludes that the individual defendants are qualifiedly immune. The court finds that defendants have properly raised the defense in that the manner in which the defendants handled the student complaint was within the defendants' discretionary authority. Although the Board had an official policy for handling complaints (Policy KN), it was within the Board's discretion to decide whether to apply the policy under

the facts of this case. Further, the court finds that plaintiff has failed to meet his burden in convincing the court that the law was clearly established at the time of the alleged violation. Admittedly, in 1984 the law was clear that public officials could not deprive a public employee of his liberty interests in either his good name or ability to obtain employment without first affording the employee due process. This law was made clear by the Supreme Court in 1972 in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and further established in *McGhee v. Draper,* 639 F.2d 639 (10th Cir.1981) and *McGhee v. Draper,* 564 F.2d 902 (10th Cir. 1977). The court is not convinced, however, that the law, *as it is applied to the facts of this case,* was so well established that reasonable persons in the place of the defendants would have known that they were violating the constitutional rights of plaintiff. Consequently, the court finds that entry of judgment in favor of the individual defendants is required.

In the alternative, the court finds as a matter of law that even if the law were clearly established, exceptional circumstances entitle the defendants to immunity. It is the court's opinion that the individual defendants' reliance on counsel's advice in refusing to discuss the student letter and in failing to provide plaintiff a name-clearing hearing are such extraordinary circumstances as to shield the individual defendants from liability.

IT IS THEREFORE ORDERED that defendants' motion for directed verdict is granted with respect to plaintiff's property interest claim, plaintiff's liberty interest claim concerning the charges made against plaintiff in his job evaluation, and all claims against the individual defendants.

IT IS FURTHER ORDERED that defendants' motion for directed verdict is denied with respect to plaintiff's liberty interest claim concerning the defendants' handling of the student complaint.