724 F.Supp. 829 (1989)
Jerry L. PETERSON, Plaintiff,
v.
UNIFIED SCHOOL DISTRICT NO. 418, McPHERSON COUNTY, KANSAS, a Public Corporation, Defendant.
Civ. A. No. 88-4077-0.
United States District Court, D. Kansas.
October 20, 1989.
*830 Wesley A. Weathers, Weathers & Riley, Topeka, Kan., for plaintiff.
Stanley E. Oyler, Timothy J. Pringle, J.H. Eschmann, Ascough, Bausch & Eschmann, Topeka, Kan., Anthony F. Rupp, Shughart, Thomson & Kilroy, P.C., Overland Park, Kan., David G. Shriver, McPherson, Kan., for defendant.

MEMORANDUM AND ORDER
EARL E. O'CONNOR, Chief Judge.
This matter comes before the court on defendant's motion for summary judgment. Plaintiff filed a civil rights action under 42 U.S.C. § 1983 in which he claims that Unified School District No. 418 ("school district") violated his civil rights when it non-renewed his employment as principal of Lincoln Elementary School and, in connection with this nonrenewal, denied him a hearing to clear his good name and reputation. For the reasons stated below, defendant's motion for summary judgment is granted.
In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. Barber v. General Elec. Co., 648 F.2d 1272, 1276 n. 1 (10th Cir. 1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); Maughan v. SW Servicing, Inc., 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. Id. at 323, 106 S.Ct. at 2552.
Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations of denials of his pleading." Id. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S.Ct. at 2511.
The pertinent facts are as follows. Jerry Peterson entered into three one-year written contracts with the school district covering *831 years 1983 to 1986. During those three years the plaintiff was the principal of Lincoln Elementary School in McPherson County, Kansas. On February 24, 1986, the school district's superintendent, Jack Hobbs, recommended to the school board that Peterson's contract not be renewed. In a document Hobbs submitted to the board the superintendent stated he believed plaintiff could not regain the confidence of several staff members. The superintendent questioned how effective Peterson could be when at least five staff members were so concerned about Peterson's performance as principal that they contacted him. The board followed the superintendent's suggestion and elected not to renew Peterson's contract. One month later the school board president, V.E. Skipton, informed the plaintiff of the board's decision.
Peterson met with the school board in executive session (i.e., in a closed meeting not open to the public) on April 14 and April 18, 1986 to discuss the nonrenewal of his contract. He was informed that his contract would not be renewed because of "staff relationships." At approximately the time of the board's formal action on the nonrenewal, plaintiff alleges that the superintendent was aware of rumors and/or allegations that plaintiff was: (1) abusive to children, including his own; (2) involved in inappropriate activity with staff members at his school ("nudging and pinching ... in confined spaces"); and (3) seeking treatment at a mental health facility. The plaintiff claims two school board members, several teachers, a teacher's husband, and a former PTA president heard similar rumors.

A. Statutory Property Interest

It is well established that a property interest in continued employment may be created by a state statute, ordinance or an implied contract. See, e.g., Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); Vinyard v. King, 728 F.2d 428, 432 (10th Cir.1984). The existence and sufficiency of such a property right must be determined by reference to state law. Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978); Bishop v. Wood, 426 U.S. at 344, 96 S.Ct. at 2077. We must therefore look to Kansas law to determine whether plaintiff has a valid property interest.
The plaintiff contends that his primary right to due process arises from the property right that he acquired from his tenure under the Administrators' Nonrenewal Procedure Act ("Administrators' Act"). As this court noted in Burk v. Unified School Dist. No. 329, 646 F.Supp. 1557 (D.Kan. 1986), the Administrators' Act applies to administrators, principals, and supervisory personnel who have tenure, i.e., those who have completed two consecutive years of employment with the same district. See K.S.A. 72-5451(b) and K.S.A. 72-5455. Tenured administrators must be given notice of nonrenewal by April 15. K.S.A. 72-5452. The Act entitles nonrenewed tenured administrators to a hearing with the school board in executive session wherein the board must provide its reasons for nonrenewal. K.S.A. 72-5453. Administrators are then to be given the opportunity to respond. Id.
In the case at bar, plaintiff received notice of his nonrenewal on or about March 24, 1986. On that same day, the school board president advised Peterson that he could request a hearing before the board. At plaintiff's request, two hearings were held, on April 14, 1986 and again on April 18, 1986, where plaintiff had the opportunity to respond. The only reason Peterson can recall that was given for his nonrenewal was staff relationships at Lincoln Elementary School.[1] In similar vein, the school district states that plaintiff was informed his contract would not be renewed because the board had lost confidence in his ability to work with the staff.
We believe that the defendant complied with the Administrators' Act. There *832 is no question that Peterson was given notice of the school board's intent to not renew his contract before April 15. Further, plaintiff was informed that the board planned to take this action because of the poor relationship that existed between him and the elementary school staff. Finally, Peterson was provided with the opportunity to respond at two separate hearings. After considering all the evidence and the inferences from that evidence in a light most favorable to plaintiff, we believe that no issues of material fact exist as to whether defendant complied with the Administrators' Act.
Principals in Kansas are also covered by the Evaluation of Certified Personnel Act, K.S.A. 72-9003, which provides that every Board of Education must adopt a written evaluation of policy and file that policy with the State Board of Education. K.S.A. 72-9004(f) provides:
The contract of any person subject to evaluation shall not be nonrenewed on the basis of incompetence unless an evaluation of such person has been made prior to notice of nonrenewal of the contract and unless the evaluation is in substantial compliance with the board's policy of personnel evaluation procedure as filed with the state board in accordance with the provisions of K.S.A. 72-9003, and amendments thereof.
K.S.A. 72-9004(a) further provides that the evaluation policy should take into consideration such qualities and attributes as efficiency, professional deportment, ability, results and performance.
We believe defendant complied with K.S.A. 72-9001 et seq. and the board's formal evaluation policy. Plaintiff was evaluated in writing and received a copy of his evaluation on or about February 10, 1986. In making its decision of nonrenewal, the board gave consideration to the qualities and attributes set forth in K.S.A. 72-9004(a), but determined that the problems Mr. Peterson had with the faculty at Lincoln Elementary School were of such magnitude that he could not be recommended for renewal.

B. Implied Contract Claim

In addition to plaintiff's claimed statutory property interest, he also contends that he has a property right in the form of an implied contract with the school district. Under the implied contract, Peterson argues that he was entitled to notice of any deficiency in his job performance which, if not corrected, would lead to his nonrenewal, and then a meaningful and reasonable opportunity to improve. Plaintiff asserts that this implied contract is based upon the Evaluation Act, school board policies as well as district customs and usages. More specifically, Peterson relies on the superintendent's practice of assisting principals in the school district by making them aware of problems which may lead to nonrenewal.
In support of his claim, plaintiff cites Morriss v. Coleman Co., Inc., 241 Kan. 501, 513, 738 P.2d 841, 848-49 (1987), in which the Kansas Supreme Court expressly recognized that an employment at-will situation may be modified by an "implied infact" contract.[2] Plaintiff also relies on Quintana v. Archuleta, Nos. 72-1358 and 72-1359 (10th Cir., unpublished, Feb. 6, 1973) (discussed and reaffirmed in Atencio v. Bd. of Educ., 658 F.2d 774 (10th Cir. 1981)), in which the Tenth Circuit held that state board of education regulations may create an expectation of re-employment in the absence of compliance with procedures prescribed by the regulations. See also Perry v. Sindermann, 408 U.S. 593, 602-03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (plaintiff entitled to prove property interest in light of "the policies and practices of the institution.")
*833 Even assuming that plaintiff had implied contractual rights to notice of and the opportunity to improve his alleged deficiency, there is no indication that the school district failed to honor these rights.[3] Peterson himself admitted that the perceived problems he was having with his staff was brought to his attention in the Spring or Fall of 1984 by the assistant superintendent. This meeting occurred at least a year and one-half, perhaps two years before plaintiff received notice that his contract would not be renewed. Peterson by his own admission of prior notice cannot maintain that he did not have an opportunity to improve his relationship with the faculty of Lincoln Elementary School. The court is therefore convinced after carefully considering the evidence in a light most favorable to plaintiff that there are no triable facts as to whether defendant violated plaintiff's alleged implied contractual rights to notice and an opportunity to improve.

C. Procedural Due Process Claim

Plaintiff further argues that his meetings with the school board in April of 1986 did not afford him procedural due process as required by the Fourteenth Amendment. More specifically, Peterson asserts that he was entitled to the following procedures: written notice of the grounds for his nonrenewal, disclosure of the school district's evidence, the right to confront and cross-examine defendant's witnesses, the opportunity to be represented by counsel, a hearing conducted by a fair-minded and impartial decision-maker whose conclusions would rest solely on the evidence adduced at the hearing, and a written statement containing all evidence relied upon by the decision-maker. He further contends that these rights should have been afforded at a pre-termination or, at minimum, at a "full evidentiary post-termination" hearing.
The law is clearly established that fourteenth amendment due process "requires `some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). We noted in Staneart v. Ransom Memorial Hosp., 684 F.Supp. 1573, 1576 (D.Kan. 1988), however, that due process "does not require a full adversarial, evidentiary hearing prior to termination; rather, the employee should be given notice of the termination decision and an opportunity to respond." See also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). K.S.A. 72-5452 clearly provides for written notice of a school board's intention not to renew. K.S.A. 72-5453 requires, upon an administrator's request, that a meeting be held in executive session whereupon the administrator "shall be afforded an opportunity to respond to the board."
In Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), a case involving Social Security disability benefits, the Supreme Court provided a three-step analysis that can be used in other procedural due process settings. The test can be employed to determine whether a post-deprivation procedure established by state law is sufficient to protect property interests that are taken through administrative action. First, the court must decide whether the procedure designed to review the deprivation serves to deter unlawful or arbitrary nonrenewals. Second, the court must ascertain whether the state procedure is fundamentally fair to the individual affected. Id. at 343, 96 S.Ct. at 907. Third, the court must determine whether safeguards in addition to the procedures provided *834 by state law are necessary to redress the injury to an individual whose nonrenewal was found to be improper. Id. See also J. Nowak, R. Rotunda & J. Young, Constitutional Law 516 (3d ed. 1986).
We are persuaded that the procedures provided in K.S.A. 72-5452 and K.S.A. 72-5453 sufficiently protect the property interests of school administrators. The requirement that the school board specify the reasons for its intent not to renew discourages unlawful or arbitrary action. Since administrators not only have the opportunity to request a hearing but also the opportunity to respond to the reason provided for nonrenewal, we believe the process is fundamentally fair. Finally, procedural requirements currently employed allow the school board to renew contracts of individuals wrongfully denied continued employment.
We also believe that the procedures provided in the Administrators' Act meet the post-termination safeguards stated in Loudermill. When the board specifies the reason or reasons for its intent not to renew and the administrator is afforded an opportunity to respond, the hearing available under K.S.A. 72-5453 effectively serves as "an initial check against mistaken decisions" and insures that "the charges against the employee are true and support the proposed action." See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. at 545-46, 105 S.Ct. at 1495 (citing Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971)). Since we are convinced that the process established by the Kansas statutes is fundamentally fair in guarding against the unlawful deprivation of plaintiff's property interest, we must grant defendant's motion for summary judgment in regard to plaintiff's procedural due process claim.

D. Liberty Interest

The Fourteenth Amendment concept of liberty recognizes a public employee's interest in the protection of his or her good name, reputation, honor or integrity. Board of Regents v. Roth, 408 U.S. 564, 572-73, 92 S.Ct. 2701, 2706-07, 33 L.Ed.2d 548 (1972).[4] To establish a liberty interest, Peterson must show: (1) that he was stigmatized in connection with his termination; (2) that the stigma arose from substantially false characterizations of him or his conduct; and (3) that the damaging characterizations were made public through channels other than litigation he has initiated. Sipes v. United States, 744 F.2d 1418, 1421 (10th Cir.1984); Polson v. Davis, 635 F.Supp. 1130, 1142 (D.Kan.1986).
Peterson contends that his private reputation as well as his professional reputation as a school administrator has been damaged. Plaintiff does not suggest that the reason provided for his nonrenewal in any way damaged his reputation. He claims that the school board as well as the superintendent initiated or at least knew of rumors that (1) his handling of children was too harsh; (2) he had inappropriate relationships or behavior toward female teachers; and (3) that he was receiving psychiatric treatment. Plaintiff also asserts that members of the board added to the rumors by negative innuendo when they stated that there was a very good reason for his nonrenewal and someday that reason would be disclosed. Finally, he argues that the board did not afford him an opportunity to clear his name.
We conclude that the manner in which plaintiff's contract was not renewed did not implicate a liberty interest. The Tenth Circuit has recognized that "the manner in which a public employee is terminated may deprive him of a liberty interest `[w]hen the termination is accompanied by public dissemination of the reasons for dismissal, and those reasons would stigmatize the employee's reputation.'" Casias v. City of Raton, 738 F.2d 392, 396 (10th Cir.1984) (quoting Miller v. City of Mission, 705 F.2d 368, 373 (10th Cir.1983)) *835 (emphasis added). However, such is not the case here. As noted above, Peterson does not claim that the stated reason for his nonrenewal stigmatized his reputation; rather, he contends that defendant created the impression that his contract was not renewed for other, more serious reasons.
Having carefully reviewed the facts in a light most favorable to plaintiff we can find no indication beyond Peterson's conclusory allegations that rumors were created, furthered or publicly disseminated by the school district.[5] "Reputational damage standing alone is insufficient unless the [nonrenewal of the contract] explicitly stated the stigmatizing factor or implicitly ratified some other stigmatizing allegation." Owens v. City of Derby, 586 F.Supp. 37, 40 (D.Kan.1984) (citing McGhee v. Draper, 639 F.2d 639, 643 (10th Cir.1981)). We therefore grant defendant's motion for summary judgment in regard to the liberty interest claimed by plaintiff.
IT IS THEREFORE ORDERED that defendant's motion for summary judgment in regard to plaintiff's claims based on the Administrators' Act and implied contract as well as substantive and procedural due process grounds is granted.
NOTES
[1] In a deposition taken on March 7, 1989, plaintiff stated that while the superintendent may have made additional comments concerning his nonrenewal, he does not remember any such remarks. (p. 59).
[2] Where a theory of implied in-fact is alleged, the court set forth factors for determining the intent and understanding of the parties: written and oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and the objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced. Morriss v. Coleman Co., Inc., 241 Kan. 501, 513, 738 P.2d 841, 848-49 (1987) (quoting Allegri v. Providence-St. Margaret Health Center, 9 Kan.App.2d 659, 684 P.2d 1031, 1032 (1984)).
[3] In Burk v. Unified School Dist. No. 329, 646 F.Supp. 1557 (D.Kan.1986), we concluded that an attempt by the school board to enter into a contract or promulgate an evaluation policy giving an employee rights in direct conflict with the Due Process and Administrators' Acts was ultra vires and void because such a contract or policy would amount to de facto tenure for teachers and principals employed for less than two years. Id. at 1564-65. Plaintiff argues the ultra vires aspect of the implied contract in Burk hinged upon the fact that Burk lacked formal tenure. Noting that he was a tenured administrator, Peterson contends that the school district's expansion of an already existing property interest does not conflict with those provided by statute.
[4] A liberty interest may also be impinged if the government "imposed on him a stigma or disability that foreclosed other employment opportunities." Board of Regents v. Roth, 408 U.S. at 573, 92 S.Ct. at 2707; see also Walker v. United States, 744 F.2d 67, 69 (10th Cir.1984). Plaintiff here does not allege that he has been denied employment opportunities.
[5] In response to defendant's first set of interrogatories, plaintiff stated:

Board member Carlton Spencer told Paul Wagoner ... that I had been "confronted and was seeking treatment." Mary Wagoner then called Spencer and asked whether he was referring to family counseling and Spencer replied that it was something else.... Teachers Judith Fast and Jeff Almon ... implied that [I had done] something immoral and Wagoner had the distinct feeling it was something sexual. They also said that I had done something to a child that had made some parents terribly irate.... Ann Engle heard rumors ranging from verbal abuse to child abuse to family problems as the reasons for my nonrenewal.
While board member Spencer stated in a February 21, 1989 deposition that he had heard rumors of plaintiff's possible abuse of family members and/or students, there is no indication that he either initiated or circulated these rumors.