No. 66,665

DR. FRANK P. KOSIK, *Appellee/Cross-appellant,* v.
CLOUD COUNTY COMMUNITY COLLEGE, *Appellant/Cross-appellee.*

(827 P.2d 59)

Opinion filed February 28, 1992.

*Stephen J. Dennis,* of Niewald, Waldeck & Brown, of Overland Park, argued the cause, and *Gregory W. Bruning,* of the same firm, was with him on the briefs for appellant/cross-appellee.

*Terry D. Criss,* of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause, and *David D. Moshier,* of the same firm, was with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

HERD, J.: Dr. Frank P. Kosik (Dr. Kosik) brought this action for breach of contract and violation of his procedural due process rights against his employer, Cloud County Community College (CCCC), after the CCCC Board of Trustees decided to nonrenew Dr. Kosik's contract. Following a trial to a jury resulting in an award of damages to Dr. Kosik CCCC appeals, claiming numerous trial errors. Dr. Kosik cross-appeals.

## FACTS

On August 1, 1983, Dr. Kosik entered into a series of one-year contracts to serve as the director of the Learning Resources Center (LRC), the library and audio-visual laboratory, at CCCC. Dr. Kosik's contract was renewed annually up though the 1988-89 school year. All contracts signed each year by Dr. Kosik specified his status was that of Administrative Support Personnel. The administrative policies and procedures of CCCC provide administrators can be terminated or not renewed for any good cause.

Dr. Kosik was formally evaluated by the Dean of Instruction, Dr. James Douglass, on August 28, 1986. Dr. Douglass acknowledged Dr. Kosik's expertise "in the library and in all technical phases." Dr. Douglass, however, went on to state:

"Explanation: Even though I recommended contract in June, the board was hesitant and your renewal was on a split vote. Obviously they were responding to a collection of adverse comments over a period of time. Hopefully, comments are beginning to be favorable."

In April 1987, 80 of the 600 students at CCCC signed a petition calling for a review of the appointment of Dr. Kosik to his position of director of the LRC. At the April 20, 1987, meeting of the CCCC Board of Trustees (Board), it was recommended that the administrative staff holding administrative and administrative support contracts be reappointed with the exception of Dr. Kosik. There followed a motion to develop and present to Dr. Kosik a list of directives for changes in his conduct. The next day Dr. Kosik received the list issued by the Board, which Dr. Kosik signed.

The issue of nonrenewal of Dr. Kosik's contract came up on almost a yearly basis and was brought up by the Board. Leo Dreiling, Chairman of the Board, had been contacted personally

by both students and parents of students with complaints about Dr. Kosik. Robert Champlin, a member of the Board at the time of Dr. Kosik's contract nonrenewal, recalled receiving letters of complaint from faculty and students regarding Dr. Kosik.

In the spring of 1989, after receiving various complaints from faculty about Dr. Kosik and his strict enforcement of rules and abusive behavior, Dr. Douglass decided to recommend to the Board that Dr. Kosik's contract be nonrenewed. Dr. Douglass did not discuss these complaints with Dr. Kosik. Dr. Douglass instead contacted David D. Swenson, legal counsel to the Board, and arranged for faculty members dissatisfied with Dr. Kosik's job performance to meet with Swenson.

On April 21, 1989, Dr. Douglass wrote to Dr. Kosik indicating the intent of the Board was to nonrenew his contract. At that time, the Board had not expressed officially such an intent but had discussed nonrenewal in executive session prior to April 21, 1989. In the letter, Dr. Douglass invited Dr. Kosik to meet with him and Dr. James P. Ihrig, CCCC's president, to discuss the matter.

Upon receiving the letter, Dr. Kosik hired legal counsel. Then, Dr. Kosik requested, through his attorneys, a meeting with Drs. Ihrig and Douglass to discuss renewal of his contract. The request was denied on the basis that attorneys are not allowed to participate in nonrenewal meetings between the Board and any administrator who has received notice of the Board's intent to nonrenew.

Before the Board's meeting on May 15, 1989, Swenson prepared a resolution declaring the Board's intent to nonrenew Dr. Kosik's contract. Swenson also prepared a list of reasons for nonrenewal for good cause. At the meeting the Board voted to send Dr. Kosik notice of intent to nonrenew his contract for the 1989-90 academic year. Dr. Kosik received the notice by certified mail.

On May 22, 1989, Dr. Kosik wrote a letter to the Board discussing his disagreement with the contract renewal process and his desire to accept the invitation of the Board to meet with it to discuss the renewal or nonrenewal of his contract. Dr. Kosik requested the date of the meeting with the Board be moved back from the 10 days after the Board's receipt of the meeting request

as required by CCCC's Administrative Personnel Policy No. 6 (AP 6), and the Board complied with his request.

On June 6, 1989, the Board held a special meeting to discuss renewal or nonrenewal of Dr. Kosik's contract. The minutes from the special meeting reflect Dr. Kosik was in executive session with the Board for 55 minutes. At the beginning of the executive session with Dr. Kosik, the list of reasons for the nonrenewal of Dr. Kosik's contract was both orally read and a written copy given to Dr. Kosik by Leo Dreiling, Chairman of the Board.

Dr. Kosik brought fellow employees Janine Johnson and Donna Parker to the meeting on June 6, 1989. They were both allowed to address the Board on his behalf.

On June 16, 1989, prior to the Board meeting, members of the Board took a tour of the LRC. At the meeting itself, the Board reconsidered its reasons for nonrenewal and voted to non-renew Dr. Kosik's contract. The vote was four in favor, one abstaining, and one absent. Dan Farha, the Board member who abstained in voting for the nonrenewal, later testified he believed Dr. Kosik's contract should not have been renewed. Board member Keith Christensen did not attend the June 16, 1989, meeting. He testified at trial, however, that after considering all the information presented by Dr. Kosik, Johnson, and Parker he believed it was in CCCC's best interest to nonrenew the contract. Dr. Kosik was mailed notice of the nonrenewal on June 19, 1989.

At trial, Leo Dreiling testified he considered complaints he had heard prior to being elected to the Board in 1986, when voting at the June 16, 1989, meeting to nonrenew Dr. Kosik's contract. Dreiling did not discuss these earlier complaints with the Board. Another Board member, Lloyd Erickson, testified he made his decision to vote to nonrenew Dr. Kosik's contract prior to the June 6, 1989, meeting at which Dr. Kosik was advised of the reasons for nonrenewal. Robert Champlin seconded the motion to nonrenew Dr. Kosik's contract and voted in favor of the motion despite the fact that Champlin did not attend the June 6, 1989, meeting and did not attempt to find out what information Dr. Kosik had presented at that meeting. Champlin, however, had the letter written by Dr. Kosik in which Kosik explained why his contract should be renewed.

Dr. Kosik then filed suit against CCCC, claiming breach of his employment contract; violation of his due process rights, including a claim for damages under 42 U.S.C. § 1983 (1988) and attorney fees pursuant to 42 U.S.C. § 1988 (1988); and breach of the CCCC "master contract," an agreement entered into by the CCCC Board and the Faculty Association of CCCC.

Prior to trial both parties filed motions for summary judgment, which the trial court denied. At trial CCCC moved for a directed verdict at the close of Dr. Kosik's case in chief and at the close of all the evidence. The trial court denied both motions.

Counsel for CCCC objected to various instructions submitted by the court, particularly the court's failure to use CCCC's proposed instruction No. 16 on due process requirements. During jury deliberations, the jury presented the court with a written question concerning whether damages could be awarded if the jury found no breach of contract. Over CCCC's objection, the court gave an answer to the jury's question.

The jury subsequently returned its verdict finding Dr. Kosik's 1988-89 employment was not covered by the master contract. The jury also found the Board had good cause to nonrenew Dr. Kosik's contract and, thus, did not breach his contract. The jury, however, did find CCCC violated Dr. Kosik's procedural due process rights and awarded him $40,000 for lost wages and benefits and $25,000 for physical illness and emotional suffering. The jury did not award Dr. Kosik damages for future lost wages and benefits or for future physical illness and emotional suffering.

After the trial was concluded, the trial court denied CCCC's motion for judgment notwithstanding the verdict and granted Dr. Kosik's motion for reinstatement or, in lieu thereof, award of future lost wages and back pay and fringe benefits in the amount of $170,304.19 based on a due process violation. The trial court also granted Dr. Kosik's request for attorney fees and expenses in the amount of $31,664.35 pursuant to 42 U.S.C. § 1988.

I

First, we address the issue of whether the trial court erred in denying CCCC's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict or, in the alternative, new trial. More specifically, the issue is whether the trial

court erred in not ruling as a matter of law that Dr. Kosik's due process rights had not been violated.

To be entitled to due process Dr. Kosik must have a property interest in his continued employment with CCCC. State law rather than the United States Constitution must provide the source of this property interest. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985). Once the State has conferred a property interest, the property interest cannot be taken without constitutional, procedural due process. 470 U.S. at 541. In Kansas, a public employee who may be discharged only "for cause" has a property interest in continued employment. *Gorham v. City of Kansas City,* 225 Kan. 369, Syl. ¶ 1, 590 P.2d 1051 (1979). CCCC's Administrative Personnel Policies provide "administrators may be terminated or not renewed for any good cause." CCCC in its motion for summary judgment relied upon *Burk v. Unified School Dist. No. 329, Wabaunsee Cty.,* 646 F. Supp. 1557 (D. Kan. 1986), and argued Dr. Kosik is of the same status as a nontenured teacher and could be nonrenewed for any reason or no reason. CCCC has not asserted this contention on appeal, but neither party spells out the source of Dr. Kosik's right to due process. At oral argument, CCCC's counsel stated there was no provision for Dr. Kosik to be "tenured" but Dr. Kosik thinks of himself as tenured. On appeal, the parties do not dispute that Dr. Kosik has a protected property interest. We so hold.

Unlike teacher termination cases and most cases involving administrators, this case is not governed by statute. K.S.A. 1991 Supp. 72-5439 governs the procedural due process requirements for terminating a teacher's contract. The statutory provisions for nonrenewal of administrators' contracts, K.S.A. 72-5451 *et seq.,* (Administrators' Act), do not apply to community colleges. Thus, the common-law rules and CCCC's adopted rules of due process govern this action.

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, the United States Supreme Court discussed due process requirements in terms of terminating public employees who had property interests in continued employment under applicable Ohio statutes. The Court stated: "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by

notice and opportunity for hearing appropriate to the nature of the case.' " 470 U.S. at .542. Due process requires a balancing of competing interests. These competing interests include "the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." 470 U.S. at 542-43. The Court concluded by providing the following guidelines:

"The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. [Citation omitted.] The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. [Citations omitted.] To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." 470 U.S. at 546.

CCCC's AP 6 outlines the process by which administrators' contracts may be nonrenewed. It states:

"Administrators may be terminated or not renewed for any good cause. Whenever an administrator is to be nonrenewed or terminated, he/she shall be notified in writing in the event of nonrenewal by June 30, of the year in which the contract is to expire. Whenever an administrator is given written notice of a Board's intention to not renew or terminate the administrator's contract, the administrator may request a meeting with the Board by filing a written request therefor with the clerk of the board within ten days from the date of receipt of the written statement of nonrenewal or termination of a contract. The Board shall hold such a meeting within ten days after the filing of the administrator's request. The meeting provided for here shall be in executive session; and at such meeting, the Board shall specify the reason or reasons for the Board's intention to not renew or terminate the administrator's contract.

"The administrator shall be afforded an opportunity to respond to the Board. Neither party shall have the right to have counsel present. Within ten days after the meeting, the Board shall reconsider its reason or reasons for nonrenewal or termination and shall make a final decision as to the matter."

Although the state's Administrators' Act does not control the actions taken by community colleges, AP 6 is modeled after K.S.A. 1991 Supp. 72-5452 and K.S.A. 72-5453. K.S.A. 1991 Supp. 72-5452 provides:

"Written notice of a board's intention to not renew the contract of employment of an administrator shall be given to the administrator on or before April 10 of the year in which the term of the administrator's existing contract expires. An administrator shall give written notice to the board on or before May 10 of the administrator's rejection of renewal of the contract of employment. Terms of a contract may be changed at any time by mutual consent of both the administrator and the board."

K.S.A. 72-5453 states:

"(a) Whenever an administrator is given written notice of a board's intention to not renew the administrator's contract, the administrator may request a meeting with the board by filing a written request therefor with the clerk of the board within 10 days from the date of receipt of the written statement of nonrenewal of a contract.

"(b) The board shall hold such meeting within 10 days after the filing of the administrator's request. The meeting provided for under this section shall be held in executive section and, at such meeting, the board shall specify the reason or reasons for the board's intention to not renew the administrator's contract. The administrator shall be afforded an opportunity to respond to the board. Neither party shall have the right to have counsel present. Within 10 days after the meeting, the board shall reconsider its reason or reasons for nonrenewal and shall make a final decision as to the matter."

Chief Judge Earl E. O'Connor of the Kansas federal district court had the opportunity to consider the constitutionality of the procedure required by K.S.A. 72-5452 and 72-5453 in *Peterson v. United School Dist. No. 418*, 724 F. Supp. 829 (D. Kan. 1989). In *Peterson*, a former school principal brought an action challenging nonrenewal of his contract and claiming the school district had violated his civil rights under 42 U.S.C. § 1983. After considering constitutional principles, including those stated in *Cleveland Board of Education v. Loudermill*, Chief Judge O'Connor concluded the Administrators' Act procedures were constitutional. Chief Judge O'Connor wrote:

"We are persuaded that the procedures provided in K.S.A. 72-5452 and K.S.A. 72-5453 sufficiently protect the property interests of school administrators. The requirement that the school board specify the reasons for its intent not to renew discourages unlawful or arbitrary action. Since administrators not only have the opportunity to request a hearing but also the opportunity to respond to the reason provided for nonrenewal, we believe the process is fundamentally fair." 724 F. Supp. at 834.

Although *Peterson* is not controlling upon this court, we find it persuasive and agree that the Administrators' Act adequately protects administrators' property interests. That being true, it follows that AP 6 protects Dr. Kosik's property right. Let us now consider whether the Board complied with AP 6.

First, on May 15, 1989, Dr. Douglass presented to the Board information, memos, and notes from dissatisfied faculty members. Swensen, the Board's attorney, also gave the Board information he had gathered by interviewing 6 to 8 faculty members on April 5, 1989. In addition, at least one Board member brought copies of letters of complaint he had received. After reviewing this information, the Board voted to send Dr. Kosik notice of intent to nonrenew his contract for the 1989-90 academic year.

On May 22, 1989, Dr. Kosik wrote the Board requesting an opportunity to meet with the Board. At Dr. Kosik's request, the meeting was set for more than 10 days after receiving his request. Neither Dr. Kosik nor the Board had counsel present at this meeting held June 6, 1989. During executive session, Leo Dreiling read the following statement and list of reasons for nonrenewal to Dr. Kosik.

"Dr. Kosik, I am now furnishing you with a written list of the reasons upon which the Board made its decision to issue to you its written notice of intention not to renew your contract for the next school year. The reasons are as follows:

"1. Conduct demonstrating lack of proper professional and personal respect towards staff and students causing resentment and offense.

"2. Refusal to foster working relationships with college staff in an effort to enhance the overall learning atmosphere of the LRC and achieve harmony in the use of the LRC among students, staff and LRC personnel.

"3. Rigid and inappropriately harsh enforcement of LRC rules causing resentment among staff and students and unnecessary inaccessibility to needed materials and equipment.

"4. Public swearing and abusive conduct towards staff and students.

"5. Inappropriate and offensive conduct which has alienated a number of college faculty members to a point that they avoid the use of the LRC, giving student assignments requiring use of the LRC and any contact whatsoever by the faculty or students with Dr. Kosik.

"6. Inappropriate and offensive conduct towards students causing some students to be uncomfortable about or even to avoid using the LRC.

"7. Offensive and inappropriate conduct resulting in the underutilization of the LRC to the detriment of the college, its faculty and students.

"8. Termination of a support staff employee without the requisite administration approvals in violation of Board policies.

"9. Termination of support staff employee knowingly in direct contradiction of administration intentions and desires.

"You are entitled to have an opportunity to respond to the above charges. You may either make an oral response at this time, or you may make your response in writing before the Board meets to reconsider its reasons and your responses. The Board will meet on June 15, 1989, to reconsider its reasons for nonrenewal of your contract and to make a final decision as to the matter. You will be notified of the Board's final decision within a few days thereafter.

"Would you like to make a statement of response at this time, or would you prefer to respond in writing to the reasons?"

Dr. Kosik then was given an opportunity to respond to the nine reasons. He took almost an hour for his presentation. Once Dr. Kosik concluded and left the executive session, two of his assistants from the LRC testified in his behalf to the Board. After the presentation the Board removed items 8 and 9 from the list of reasons for nonrenewal.

On June 9, 1989, Dr. Kosik fortified his testimony with a three-page letter to the Board president with copies to each Board member. The letter states in part: "My initial reaction to the 'Reasons' remains unchanged: they in no way constitute evidence and are merely tediously repetitious and totally unfounded malevolent fabrications and willful misrepresentations."

Janine Johnson, one of the LRC staff faculty members, also wrote a letter to the Board after the June 6, 1989, meeting. The letter was supportive of Dr. Kosik.

Prior to the Board's final decision on June 16, 1989, the Board took a tour of the LRC. Following the tour, the Board voted to nonrenew Dr. Kosik's contract.

Essentially, Dr. Kosik's objections to the due process afforded him center upon the methods and actions of the Board in conducting the hearing and making its decision. He first complains that Board member Lloyd Erickson testified he had made his decision to nonrenew Dr. Kosik's contract prior to the June 6, 1989 meeting. He also complains that Leo Dreiling considered complaints he had heard against Dr. Kosik prior to his being elected to the Board when Dreiling voted to nonrenew Kosik's contract.

Issues similar to these raised by Dr. Kosik were considered by this court in *Kelly v. Kansas City, Kansas Community College,* 231 Kan. 751, 648 P.2d 225 (1982), in which we considered nonrenewal of tenured teachers. There, we stated: "Unless authorized by statute, an administrative body performing a quasi-judicial function is not subject to inquiry concerning its mental processes in reaching a decision." 231 Kan. 751, Syl. ¶ 2.

Here, there is no statutory authorization for inquiring into the mental process of the board; thus, such inquiry is improper. We hold this argument to be meritless.

Lastly, Dr. Kosik argues the vote of the Board to nonrenew his contract was improper. Four of the six board members voted to nonrenew the contract. Dr. Kosik contends Board member Robert Champlin's vote should not be counted because he did not attend the June 6 hearing. It is noted that Champlin was sent a copy of Dr. Kosik's letter to Leo Dreiling in which he set forth his response to the Board's reasons for his nonrenewal. Furthermore, Champlin attended the June 16, 1989, meeting where the Board discussed the issue of Kosik's nonrenewal prior to voting.

A similar argument was made in *Kelly.* We held the risk of a wrongful deprivation of due process increases where board members neither attend the hearing nor read the entire record thereof but the risk is lessened where some members read the hearing record and the issues are thoroughly presented, argued, and discussed before a vote is taken. *Kelly,* 231 Kan. at 761. We hold the presumption of regularity of a Board's action was not overcome by Dr. Kosik's evidence, and thus due process requirements were satisfied.

We hold the procedure adopted by the Board does not violate due process. Dr. Kosik was afforded notice of nonrenewal. He was provided a list of reasons for nonrenewal and a hearing before the Board to attempt to refute those reasons orally and in writing. Moreover, Dr. Kosik was permitted to call witnesses in his behalf. The Board then met and reconsidered its intention to nonrenew and decided Dr. Kosik's evidence did not persuade it to renew his contract. Because the Board properly followed its adopted due process procedure, we hold Dr. Kosik was afforded the due process required in this case.

The facts surrounding the procedure used by the Board in nonrenewing Dr. Kosik's contract were not in dispute. Therefore, the legal question of whether due process was afforded should have been decided by the trial court as a matter of law. The trial court erred in denying CCCC's motion for directed verdict on this issue at the close of Dr. Kosik's case. At that time, the trial court had ample undisputed facts upon which to base its decision that the Board did not violate Dr. Kosik's right to due process.

## II

Dr. Kosik in his cross-appeal questions whether sufficient evidence supports the jury's finding that CCCC had good cause to nonrenew his contract on June 16, 1989.

The duty of an appellate court when considering the sufficiency of the evidence is well established. We have stated:

"[T]he duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below." *Lambeth v. Levens*, 237 Kan. 614, 622, 702 P.2d 320 (1985).

We have previously discussed much of the information the Board possessed on June 16, 1989, when it voted to nonrenew Dr. Kosik's contract. This information was introduced at trial. It showed Dr. Douglass had presented memos and letters of complaint to the Board on May 15, 1989. At the same meeting David Swenson provided the Board with information he had gathered by interviewing six to eight faculty members. Several Board members testified they had received complaints from students, parents, and faculty over a period of time. Keith Christensen brought photocopies of complaints he had received to the May 15, 1989, meeting.

After reviewing the evidence, we find substantial evidence to support the jury's finding that good cause existed to nonrenew Dr. Kosik's contract.

## III

Dr. Kosik's final issue on cross-appeal is whether, as a matter of law, good cause existed to nonrenew his contract.

Dr. Kosik claims the Board lacked good faith and acted irrationally when voting to nonrenew his contract and, therefore, the Board's action can be ruled invalid as a matter of law. Dr. Kosik cites *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 605 P.2d 105 (1980), which involved the nonrenewal of a teacher's contract. We held:

"[U]nder the Kansas due process statute (K.S.A. 1977 Supp. 72-5436 *et seq.*) a tenured teacher may be terminated or nonrenewed only if good cause is shown, including any ground which is put forward by the school board in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the school board's task of building up and maintaining an efficient school system." 227 Kan. at 78.

We agree with the rule stated in *Gillett*, but disagree with Dr. Kosik's portrayal of the Board's actions. After a review of the evidence, we hold the Board acted in good faith. The issue of whether the Board had good cause to nonrenew Dr. Kosik's contract was a question of fact determined by the jury.

## IV

Our decision on the issue of due process makes all other issues moot. The jury verdict on breach of contract and the coverage of the master teacher contract of the CCCC were not appealed and, therefore, are not before this court and must stand. Because we have found the Board did not violate Dr. Kosik's due process rights, coupled with the jury determination there was no breach of contract and that the master contract did not apply, there remains no basis upon which Dr. Kosik can be awarded relief.

The judgment of the trial court is reversed on the due process issue. The awards of attorney fees, damages, and other relief to Dr. Kosik are set aside. The judgment is affirmed on all other issues.