(6 P.3d 900)

No. 82,435

JANIE R. STOCKMAN, *et al.*, *Plaintiffs*, WILLIAM A. GOBLE and MONICA J. GOBLE, *Plaintiffs/Appellants*, and GEORGE FORD, VIRGINIA FORD, and DENNIS J. ANDREWS, *Intervenors/Appellants*, v. UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/ KANSAS CITY, KANSAS, *Appellee*.

Opinion filed February 18, 2000.

*David W. Carson* and *Thomas O'Neill*, of Carson & O'Neill, of Kansas City, for appellants Andrews and Ford.

*Timothy P. McCarthy*, of Williamson & Cubbison, of Kansas City, and *S. Preston Williams*, of Williams & Barzee, of North Kansas City, Missouri, for appellants Goble.

*Harold T. Walker*, chief counsel, and *N. Cason Boudreau*, deputy chief counsel, of Unified Government, and *Stephen P. Chinn, Michael J. Davis*, and *David W. Bushek*, of Stinson, Mag & Fizzell, P.C., of Kansas City, Missouri, for appellee.

Before GERNON, P.J., MARQUARDT, J., and BUCHELE, S.J.

MARQUARDT, J.: William and Monica Goble, George and Virginia Ford, and Dennis Andrews are homeowners who appeal the trial court's granting of summary judgment to the Unified Government of Wyandotte County/Kansas City (UG), a constitutionally chartered municipal government.

This case involves a dispute between property owners in Wyandotte County and the UG. In December 1997, the UG entered into an agreement with Kansas International Speedway Corporation (KISC), which established a plan for the development of an auto race track facility.

In February 1998, Governor Graves signed House Bill No. 2631 which amended certain portions of K.S.A. 12-1770 *et seq.* The amended statutes made certain allowances for development within a major tourism area. In March 1998, the UG adopted Resolution R-17-98, which designated a certain area in Wyandotte County as a major tourism area. The Secretary of the Kansas Department of Commerce and Housing declared the area in question to be a major tourism area. The UG also passed Resolution R-18-98, which set a date for a public hearing to consider the establishment of a redevelopment district within the major tourism area. Notice of the meeting was published in the UG's official newspaper.

A public hearing was held on March 19, 1998. After the hearing, the UG adopted Resolution R-24-98, which certified that the redevelopment district was within an area which had been declared a major tourism area. The comprehensive redevelopment project was formally established by Ordinance O-11-98. O-11-98 was published in the UG's official newspaper. The UG formed an acquisition committee in order to develop a procedure for acquiring land within the project area.

In May 1998, the UG developed a proposed redevelopment plan. The UG enacted Resolution R-48-98, which notified the public about a hearing to consider adoption of the redevelopment plan. All property owners within the redevelopment district were sent a copy of R-48-98. The resolution was also published in the UG's official newspaper. The redevelopment plan contained a relocation plan which applied to persons living within the major tourism area and provided compensation to property owners who would incur relocation expenses.

Following a public hearing, the UG passed Ordinance O-48-98, officially adopting the redevelopment plan. O-48-98 was published in the UG's official newspaper. In July 1998, the UG began authorizing condemnation of land within the redevelopment district. Also in July 1998, the Gobles, along with several other plaintiffs, filed suit against the UG. The Gobles asked for declaratory judgment, contending that the adoption of the redevelopment plan was arbitrary, capricious, and not supported by material evidence. The

Gobles also asked the trial court to grant an injunction declaring the relocation plan void in order to stop its implementation.

The UG answered the petition with general denials. The UG also filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law because its actions were valid legislative acts.

The Gobles controverted several of the UG's statements of fact and issued their own additional uncontroverted statements of fact. The Gobles alleged that they had not been offered any form of relocation assistance. The UG responded that the Gobles' statements were unique to their situation and should not affect the disposition of the UG's motion for summary judgment. The UG argued that these facts could not help the trial court determine whether the relocation plan was validly enacted.

The trial court granted UG summary judgment in November 1998. It found that since the project was not being funded with federal money, the UG was not required to comply with the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act. Similarly, the trial court found that the Kansas Relocation Assistance for Persons Displaced by Acquisitions of Real Property Act, K.S.A. 58-3501 *et seq.*, did not apply. It found that the UG's relocation plan complied with K.S.A. 1998 Supp. 12-1777 and that the plaintiffs' constitutional challenges to the relocation plan were without merit. Andrews, the Fords, and the Gobles all timely appeal the trial court's granting of summary judgment.

### The Gobles' Claims

The Gobles contend that they are entitled to federal relocation benefits because their property is located on a state and federal right-of-way. The Gobles claim that the UG did not respond to this statement in the Gobles' response to the UG's motion for summary judgment and, therefore, it is uncontroverted and must be admitted as true.

Interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Patterson,* 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

The Uniform Relocation Assistance Act (URA) was designed to minimize the adverse impact of displacement. 42 U.S.C. § 4621(a)(4) (1994). The URA only applies in situations where the displacement is a direct result of programs or projects undertaken by a federal agency or with federal financial assistance. 42 U.S.C. § 4621(a)(1). The State of Kansas established the Relocation Assistance for Persons Displaced by Acquisition of Real Property Act in order to comply with the URA. See K.S.A. 58-3501. K.S.A. 58-3502(1) and (4) provide:

"Whenever any program or project is undertaken by the state of Kansas, any agency or political subdivision thereof, under which federal financial assistance will be available . . . and which program or project will result in the displacement of any person by acquisition of real property . . . the state, agency, or political subdivision may:

"(1) Provide fair and reasonable relocation payments and assistance to or for displaced persons . . . .

. . . .

"(4) Pay or reimburse property owners for necessary expenses as specified in . . . the federal act."

The key issue before this court is whether the URA applies to the Gobles. All projects associated and designated within the redevelopment area are being funded with State money. The undisputed evidence shows that the UG is not receiving any federal financial assistance for the redevelopment project. This project was initiated by the UG, which is not a federal agency. Therefore, the Gobles are not entitled to protection under the URA.

The Gobles contend that the statement in their answer to the UG's motion for summary judgment is undisputed and proves that they are entitled to the protection of the URA. K.S.A. 1998 Supp. 60-256 puts the burden on the party responding to a motion for summary judgment to show that there are unresolved issues of material fact. The Gobles' contention is irrelevant. They simply claim that they are located on a federal right-of-way. The Gobles never contend that the redevelopment project is being supported by federal financial aid. We find no error in the trial court's decision that the URA does not apply to the Gobles.

The Gobles contend that the UG's relocation plan does not comply with K.S.A. 1998 Supp. 12-1777(a) because it does not provide consideration for business moving costs. The Gobles claim that the UG's relocation plan does not meet the requirements of K.S.A. 1998 Supp. 12-1777(a) and (c), although they do not provide any elaboration as to how the plan is not compliant.

An appellate court is not bound by the district court's interpretation of a statute. *Smith v. Printup*, 262 Kan. 587, 604, 938 P.2d 1261 (1997).

K.S.A. 1998 Supp. 12-1777 states:

"Before any redevelopment project shall be initiated under this act a relocation assistance plan shall be approved by the governing body proposing to undertake the project. Such relocation assistance plan shall:

"(a) Provide for relocation payments to be made to persons, families and businesses who move from real property or who move personal property from real property as a result of the acquisition of the real property by the city in carrying out the provisions of this act. With respect to any redevelopment project other than one which includes an auto race track facility, such payments shall not be less than $500;

. . . .

"(c) provide for the payment of any damages sustained by a retailer, as defined by K.S.A. 79-3702, and amendments thereto, by reason of the liquidation of inventories necessitated by relocation."

The UG's relocation plan provides that the owner of an occupied home shall receive a relocation payment of $500. Each single family tenant is also entitled to $500, as is each apartment tenant. Each disabled occupant may receive an additional $1,000 payment. The owners of residential businesses are to receive a $1,500 payment. The owners of each displaced commercial business are entitled to receive a payment equal to the damages sustained by the business by reason of the liquidation of inventories, on a commercially reasonable basis.

The UG has provided $500 for each homeowner, which is not required under the statute. K.S.A. 1998 Supp. 12-1777(c) creates a special type of compensation for retailers. The relocation plan complies with K.S.A. 1998 Supp. 12-1777(c) by granting commercial business owners damages equal to the value of their liquidated

inventory. The trial court correctly found that the UG's relocation plan complies with K.S.A. 1998 Supp. 12-1777.

The Gobles claim that the UG is violating their rights to equal protection by providing relocation expenses for residential landowners and residential business owners, but not for commercial business owners. The Gobles claim that there is no reasonable basis for this disparate treatment.

It does not appear that the Gobles are being treated differently from other persons within the redevelopment area. The Gobles are entitled to relocation assistance in the form of the value of their liquidated inventory. While the formulation of their benefits is different from the flat fee afforded to residents and residential business owners, the Gobles will receive relocation benefits.

The constitutionality of a statute is presumed and all doubts must be resolved in favor of its validity. Before the statute may be declared unconstitutional, it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute if there is any reasonable way to construe the statute as valid. *State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City*, 264 Kan. 293, 300, 955 P.2d 1136 (1998).

The United States Supreme Court has described the concept of equal protection as treatment between classes of individuals whose situations are arguably indistinguishable. Whether the legislation passes constitutional muster depends on the relationship borne by the challenged classification to the objective sought by its creation. *Chiles v. State*, 254 Kan. 888, 891, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994).

In making an equal protection analysis, the first step is determining which level of scrutiny to apply where a statute distinguishes between classes of individuals. *KPERS v. Reimer & Koger Assocs., Inc.*, 261 Kan. 17, 41, 927 P.2d 466 (1996). The least strict scrutiny is referred to as the "rational basis" test, which contains two substantive limitations: legislative enactments must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to those goals. *U.S.D. No. 229 v. State*, 256 Kan. 232, 259-60, 885 P.2d 1170 (1994), *cert. denied* 515 U.S. 1144

(1995). The classification must serve important governmental objectives and must be substantially related to the achievement of those objectives. *In re Tax Appeal of Alsop Sand Co., Inc.,* 265 Kan. 510, 522, 962 P.2d 435 (1998).

The rational basis test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the rational basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 847, 942 P.2d 591 (1997). A plaintiff asserting the unconstitutionality of a statute under the rational basis standard has the burden to negate every conceivable basis which might support the classification. *Peden v. Kansas Dept. of Revenue,* 261 Kan. 239, Syl. ¶ 6, 930 P.2d 1 (1996), *cert. denied* 520 U.S. 1229 (1997).

In the instant case, the trial court found that the relocation plan utilized reasonable classifications of similarly situated individuals and property that have a rational relationship to the valid legislative purposes of K.S.A. 12-1770 *et seq.* The legislature had the power to create different classes, and the creation of the classes was tied to the legislative goal of promoting economic welfare through the development of major tourism areas. See K.S.A. 1998 Supp. 12-1770. The Gobles' arguments to the contrary are not persuasive and are rejected.

The Gobles claim that the UG did not provide due process in the formulation and promulgation of the relocation plan. The Gobles do not elaborate, but instead reiterate their arguments about how the relocation plan does not comply with K.S.A. 1998 Supp. 12-1777 and how the relocation plan violates their right to equal protection.

The concept of due process of law has a dual aspect, substantive and procedural. 16B Am. Jur. 2d, Constitutional Law § 901, p. 485. When a statute is attacked as violative of due process, the test is whether the legislative means selected has a real and substantial relation to the objective sought. This rule has been restated in terms of whether the regulation is reasonable in relation to its sub-

ject and is adopted in the interest of the community. *Weinlood v. Simmons*, 262 Kan. 259, 263, 936 P.2d 238 (1997).

Constitutional procedural due process analysis is a two-step process in which the court first determines whether due process is even implicated and, if it is, then determines what process is due. At the first level the claimant must establish some property or liberty interest such that the protections of the Due Process Clause are involved. Once a claimant has established a property or liberty interest is at stake, to make a valid claim of a violation of due process rights the claimant must then establish that he or she was denied some specific procedural protection to which he or she is entitled. *Brown v. U.S.D. No. 333*, 261 Kan. 134, 150, 928 P.2d 57 (1996).

A mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws, does not constitute a vested right. *Gleason v. Samaritan Home*, 260 Kan. 970, 987, 926 P.2d 1349 (1996). State law rather than the United States Constitution must provide the source of this property interest. Once the State has conferred a property interest, the property interest cannot be taken without constitutional procedural due process. *Kosik v. Cloud County Community College*, 250 Kan. 507, 512, 827 P.2d 59, *cert. denied* 506 U.S. 867 (1992).

The trial court found that the Gobles did not have a vested property right in the expectancy of relocation benefits. The UG claims that the Gobles do not have a constitutionally protected right to receive relocation benefits.

K.S.A. 1998 Supp. 12-1777(c) mandates that commercial business owners receive damages equal to the value of their liquidated inventory. This provision was adopted in the UG's relocation plan.

The essential elements of due process in an action affecting a person's life, liberty, or property are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *State v. Durst*, 235 Kan. 62, 66, 678 P.2d 1126 (1984). These requirements are satisfied if the taking entity provides notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity

to present their objections. *In re Baby Boy Bryant*, 9 Kan. App. 2d 768, 771, 689 P.2d 1203 (1984).

The UG provided notice of its March 19, 1998, meeting in Resolution R-18-98. The purpose of this hearing was to consider findings necessary for the establishment of a redevelopment district. It was only after the hearing that the UG promulgated Ordinance O-11-98, which established a redevelopment district.

The UG also provided notice of another hearing which was held on June 25, 1998. The purpose of this hearing was to consider adoption of the redevelopment plan. The UG sent letters to all property owners within the redevelopment district. The UG's records show that the Fords, Andrews, and the Gobles received mailed notice from the UG. A transcript of the June 25, 1998, meeting reflects that the floor was opened up for public comments or questions. The redevelopment plan was not adopted by the UG until after the public hearing. The record on appeal contains proof of publication for R-18-98 and R-48-98.

The record on appeal clearly shows that the Gobles, as well as the rest of the property owners, were afforded adequate procedural due process. The UG provided publication notice as well as mailed notice before the redevelopment district was created and before the redevelopment plan was adopted. The UG held a hearing where property owners were given an opportunity to be heard. These steps satisfy the requirements of procedural due process.

*Andrews and the Fords' Claims*

### Is Race Track a Public Purpose?

Andrews and the Fords contend that the "core issue" before this court is whether the UG is acting in pursuit of a public purpose. Andrews and the Fords claim that the UG is abusing its sovereign power of eminent domain in pursuit of a profit-driven, private enterprise.

The question of whether the race track is a public purpose is a question of law. As such, this court has an unlimited power of review. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

This issue has already been decided in favor of the UG. In *State ex rel. Tomasic v. Unified Gov't of Wyandotte County/Kansas City*, 265 Kan. 779, 790, 962 P.2d 543 (1998), the Kansas Supreme Court held that "the development of the auto race track facility and related projects are valid public purposes." This argument is without merit.

## Is the Building of a Race Track a Public Purpose?

Andrews and the Fords maintain that the agreement between the UG and the Kansas Department of Transportation (KDOT) clearly shows that the URA is applicable to the condemnation proceedings now at issue. Andrews and the Fords contend that URA mandates were imposed within this agreement. They also contend that the UG committed an ethical violation by not presenting the agreement to the trial court.

This issue was not raised before the trial court and was not considered by the trial court when it made its decision. A new legal theory may not be asserted for the first time on appeal or raised in a reply brief. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997). This court does not have jurisdiction to consider this argument.

As previously noted, the URA is not applicable to the UG's condemnation proceedings because there is no evidence in the record on appeal which would suggest that federal financial assistance is being used for this project. Without federal financial assistance, the URA and the identical state provision does not apply. Any argument to the contrary is incorrect. Additionally, Andrews and the Fords do not have standing to raise this argument. The contract is between the UG and KDOT and has a clause entitled "Limitation of Parties," which states:

"This agreement is intended and shall be construed as existing only between the Secretary and the [UG]. By its terms or operation it shall not include any other person or entity nor does it create or establish any rights in any other person or entity who may have an interest in the ISC development."

Andrews and the Fords would have the right to enforce the UG-KDOT contract if they were third-party beneficiaries to the contract. See *Cornwell v. Jespersen*, 238 Kan. 110, 114-15, 708 P.2d

515 (1985). In the instant case, it is clear that neither the UG nor KDOT intended for anyone to be a third-party beneficiary. The "Limitation of Parties" clause of the contract is a clear and unambiguous statement which limits application of the contract and effectively precludes the possibility of allowing a third-party beneficiary. Andrews and the Fords do not have standing to challenge the contract between the UG and KDOT because they are not parties to the contract. This argument is without merit.

## Delegation of Power of Eminent Domain

Andrews and the Fords claim that the clear purpose of the agreement between the UG and KISC is to delegate by contract the UG's sovereign power of eminent domain to KISC for the acquisition of property for the race track site.

Once again, this issue was not raised before the district court. Issues not raised before the trial court cannot be raised on appeal. *Ripley v. Tolbert*, 260 Kan. 491, 513, 921 P.2d 1210 (1996). This court does not have jurisdiction to consider this argument.

Also, the Kansas Supreme Court considered this issue in *Tomasic* and found that the development of the auto race track facility warranted the use of the UG's power of eminent domain. 265 Kan. at 790. This argument is without merit.

Andrews and the Fords claim that any contract executed by a property owner with the UG is illegal and unconstitutional because it is tainted by the illegal agreement between the UG and KISC and because it was not formed under the guise of the URA. Andrews and the Fords claim that the failure to comply with the URA constitutes fraud and undue influence. They further argue that this "civil conspiracy" is an actionable tort that gives rise to a cause of action under 42 U.S.C. § 1983 (1994).

This argument was not raised before the trial court. Where constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review. *Ruddick v. Boeing Co.*, 263 Kan. 494, 498, 949 P.2d 1132 (1997). This court does not have jurisdiction to consider this argument.

## Granting of Summary Judgment

The Gobles contend that there are several issues of fact left to

be considered by the trial court, including the disparate treatment of commercial business owners and the question of whether the URA applies. Andrews and the Fords claim that the UG's relocation plan is illegal and denies property owners of fundamental legal and constitutional rights.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

All material issues of fact raised by the appellants have been settled in favor of the UG. As previously noted, the URA does not apply. Furthermore, K.S.A. 1998 Supp. 12-1777 authorizes a different way to calculate relocation expenses for commercial businesses. This court cannot rewrite the laws of the State of Kansas to suit the Gobles' wishes. This court has determined that the UG's relocation plan was formulated in compliance with K.S.A. 1998 Supp. 12-1777 and, therefore, is not illegal.

Andrews and the Fords claim that the UG's statements of uncontroverted fact are "flatly false." However, they do not provide this court with any evidence which would support their position. Assertions in an appellate brief are not sufficient to satisfy inadequacies in the record on appeal. *Smith v. Printup*, 254 Kan. 315, 353, 866 P.2d 985 (1993).

The trial court did not err by granting the UG's motion for summary judgment. There were no disputed issues of law or fact which would have necessitated a trial on the parties' petition. A review of the Gobles', the Fords', and Andrews' issues on appeal satisfy this

court that the trial court correctly granted the UG's motion for summary judgment.

Affirmed.